**SOUTHERN ORNAMENTAL IRON WORKS v. MORROW.**

No. 13473.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 8, 1937.

Rehearing Denied Feb. 5, 1937.

Richard Owens, of Fort Worth, for appellant.

Lawrence Tarlton, of Fort Worth, for appellee.

SPEER, Justice.

This suit involves the principles found in what is known to our jurisprudence as "class suits," and upon these issues the rights of the parties here must be determined.

On May 31, 1935, Wright 'Morrow, receiver and trustee for Lumbermen's Reciprocal Association, instituted this suit in the Seventeenth district court of Tarrant county, Tex., against the Southern Ornamental Iron Works of Arlington, Tex., a private corporation, to recover a judgment for $1,429.23, with interest thereon from May 1, 1933, at the rate of 6 per cent. per annum, by reason of an assessment against the defendant as a subscriber to, and policyholder in, Lumbermen's Reciprocal Association during a time when it was alleged the association was insolvent.

The pleadings of the parties to this suit are very lengthy, and it would unnecessarily extend this opinion to give them in detail here. We shall refer only to those parts which we consider material to the points upon which we think the case should be decided.

Plaintiff alleged the organization of the Lumbermen's Reciprocal Association under the provisions of chapter 20, title 78, Rev. Civ.St.1925 (article 5024 et seq.); and that prior to July 1, 1929, and from that date to July 31, 1930, the defendant was a member at said association; that as such member it had, by an instrument in writing, named, constituted and ap-

pointed Christie & Hobby, Inc., its true and lawful attorney in fact, with power to act in defendant's place and stead, in all matters pertaining to the operation of the business of a reciprocal insurance association, especially in the issuance of contracts of exchange of indemnity insurance with other subscribers at said association.

It was further alleged that by the terms of said power of attorney defendant's said agent should appear for it in any suit or legal action and to answer, prosecute, defend, or compromise the same and to do and perform any and all other things necessary for and on behalf of the defendant, as fully and completely as could the defendant, in relation to any contract of insurance of indemnity authorized by law to be made by said association; that defendant invested its said attorney in fact with full power of substitution.

It was averred that defendant and each of the other subscribers at Lumbermen's Reciprocal Association entered into identically the same character of contracts and powers of attorney to the same attorney in fact, binding themselves severally to pay their respective pro rata parts of any deficits and losses sustained by said association in the operation of its business, provided, however, that no one subscriber should ever be required to pay by assessment for such deficits and losses a greater sum than an amount equal to one additional annual premium deposit on each policy of insurance issued to them.

Plaintiff alleged that there were issued to defendant certain policies of insurance upon which the premiums earned during the period embraced between July 1, 1929, and July 31, 1930, amounted to $4,330.98. That the Lumbermen's Reciprocal Association became insolvent and remained so between said July 1, 1929, and July 31, 1930. That a suit was instituted in the district court of Travis county, Tex., by the State of Texas against said Lumbermen's Reciprocal Association asking for a receiver therefor, and on July 31, 1930, plaintiff was by said court appointed receiver for Lumbermen's Reciprocal Association with instructions from said court to take charge of and marshal all assets belonging to said association. That plaintiff complied with said order and it was found that a large sum of money would have to be raised by the receiver from the subscribers at said association under their respective contracts to cover the deficit of liabilities and expenses over and above the assets then in the receiver's hands.

It was alleged there were about four thousand subscribers at Lumbermen's Reciprocal Association, including the defendant; that it was impracticable and impossible for the receiver to sue and serve with process each and all of said subscribers in a suit for the purpose of making an assessment to raise sufficient funds to cover said deficit, and it became necessary to file a class suit in said district court of Travis county, Tex., where said receivership was then pending, against said subscribers; that he instituted said class suit "against the Trinity Portland Cement Company, a corporation, and twenty-seven other defendants, all being subscribers at the Lumbermen's Reciprocal Association, during the period of time hereinabove mentioned (July 1, 1929 to July 31, 1930), and being fairly representative as a class of all the subscribers at the Lumbermen's Reciprocal Association during the period mentioned; said defendants being sued individually and as named defendants and also as representative of all other subscribers at Lumbermen's Reciprocal Association who were such subscribers during the period from July 1, 1929, to July 31, 1930, said cause being No. 51867. * * * The suit was brought as a class suit in order to establish and fix the assessment liability of each and all subscribers at Lumbermen's Reciprocal Association who were subscribers and policyholders therein during the period from July 1, 1929, to July 31, 1930."

Averments were made by plaintiff that on May 1, 1933, a final judgment and decree of said court was entered, in which it was found that after allowing all credits for value of the assets in the hands of the receiver, there would still remain a deficit of unpaid liabilities of $625,-483 62, and that under and by virtue of the contracts of said subscribers they were liable to the receiver for their respective proportionate part thereof. That said judgment provided that the aggregate of all premiums booked and earned by subscribers at Lumbermen's Reciprocal Association during the period from July 1, 1929, to July 31, 1930, amounted to $1,-895,404.90, and that it required an assessment against the subscribers of 33 per

cent. of the amount of booked and earned premiums to make up said deficit of $625,-483.62. That by the terms of said judgment said assessment of 33 per cent. was made of the booked and earned premiums during the period mentioned against each subscriber at Lumbermen's Reciprocal Association, and the plaintiff was authorized to collect the same.

Prayer was for judgment for $1,429.23 with interest as mentioned in the first part of this opinion. The principal amount sued for was alleged to be 33 per cent. of the amount of the booked and earned premiums on policies issued to defendant during the period from July 1, 1929, to July 31, 1930.

Defendant answered with a general demurrer and twenty-three special exceptions, along with general and special answers. The general demurrer and all special exceptions were by the court overruled, to which ruling it excepted and has assigned errors.

In the answer of defendant there were special averments denying under oath that any partnership existed between it and other subscribers at Lumbermen's Reciprocal Association; that at the time it subscribed to said association, one Haliday, as a representative of Christie & Hobby, Inc., told defendant it would never be liable for an assessment and that on all policies an indorsement would be attached to that effect, and that defendant relied upon said statement as being true and but for such statement it would not have subscribed at Lumbermen's Reciprocal Association. It was further alleged in said answer that an indorsement of "suspension of liability to assessment" was in fact attached to said policies, and each renewal thereof during the period of time between July 1, 1929, and July 31, 1930, which said indorsements contained certificates from the Commissioner of Insurance of Texas, dated March 19, 1929, and March 17, 1930, respectively, in which it was shown the said certificates were based on statements of the financial condition of Lumbermen's Reciprocal Association as made to said Commissioner of Insurance.

The answer further averred the receiver had compromised other assessments made against subscribers for less than the amount assessed, thereby leaving an excess deficit, causing defendant to pay a greater percentage than it would have been required to pay had such compromise not been made.

Special answer was made that the judgment of the district court of Travis county in cause No. 51867, wherein plaintiff claimed judgment, was entered in the "class suit," declaring the deficit in the assets of Lumbermen's Reciprocal Association to pay its obligations and expenses of the receivership and decreeing that an assessment of ·33 per cent. be collected from subscribers on all booked and earned premiums on policies issued and effective between July 1, 1929, and July 31, 1930, was as to it void for the reason it was not a party to said cause, not having been named as defendant therein and not having been served with process, and that it did not waive such process nor answer nor appear therein.

Defendant further answered that those named by plaintiff as defendants in the suit in the district court of Travis county were not in fact a representative class of subscribers at Lumbermen's Reciprocal Association, for the reason each and all subscribers to said association were independent of the other and had no common interest in said contracts of insurance; moreover, that the interests of some of said subscribers were adverse to that of others.

The further plea was made that if plaintiff ever had a valid claim against defendant, same was barred by the statutes of two and four years' limitation.

By replication and supplemental plea the plaintiff presented special exceptions to parts of defendant's answer and these exceptions were by the court sustained, leaving the only parts of said answer to stand, presenting as a defense the following matters:

1. Defendant's general denial.

2. The sworn denial by defendant that any form of partnership existed between it and other subscribers.

3. That under the terms of the power of attorney to Christie & Hobby, Inc., said attorney in fact had no power to bind defendant for the payment of any part of Lumbermen's Reciprocal Association's indebtedness for any other amount than defendant's annual premium deposit on the policies issued to it.

4. That in, no event was the defendant liable to plaintiff for a greater amount than its pro rata part of all the deficit

owing by the Lumbermen's Reciprocal Association at the time of the appointment of the receiver, together with necessary expense thereof, and that because the receiver had compromised some of said claims against subscribers for less than the full amount owing by such subscribers and had failed to collect from others, defendant's pro rata part thereof should be reduced in proportion to those with whom settlement had been so made.

5. That the defendants named in the Travis county suit could not be and were not a fair representative class of all subscribers at Lumbermen's Reciprocal Association, for the reason the power of attorney executed by defendant disclosed that the interests of the respective subscribers were never to be common or general as among such subscribers, nor were said subscribers interested in a common fund, but that the interests of some were adverse to the interests of others.

6. The plea of a bar by the two and four years' statutes of limitation.

The plaintiff offered in evidence certified copy of the judgment of the district court of Travis county appointing him as receiver and trustee for Lumbermen's Reciprocal Association, together with certified copies of his oath and bond as such; certified copy of the judgment of the district court of Travis county entered on September 5, 1930, especially authorizing the plaintiff to take charge of all assets of Lumbermen's Reciprocal Association, and to collect, compromise, and possess all claims due and owing to it by whatever means that seemed best to the receiver; the written application of defendant for a subscription at Lumbermen's Reciprocal Association, which instrument is a lengthy printed document containing those provisions set out in plaintiff's petition; plaintiff introduced several contracts of indemnity insurance in favor of defendant issued by Lumbermen's Reciprocal Association, in which the premiums were booked and accrued during the period from July 1, 1929, to July 31, 1930, which premiums were shown to aggregate $4,330.98. Plaintiff introduced in evidence a certified copy of a judgment of the district court of Travis county, Tex., rendered on May 1, 1933, in cause No. 51867, styled Wright Morrow, Receiver for Lumbermen's Reciprocal Association, v. Trinity Portland Cement Company et al., which judgment is in print-

ed pamphlet form consisting of nineteen pages; this is the judgment rendered in the class suit referred to in the first part of this opinion, and 'it will become necessary to refer to it hereafter and shall be designated by us by the case number shown above. By the deposition of the district clerk of Travis county, it was proven that the judgment in cause No. 51867 was still in full force and effect, that it had never been satisfied, and that no appeal was prosecuted from it; a certified copy of the judgment of the district court of Travis county, dated May 2, 1933, authorizing the receiver to proceed to collect the assessment liability of the subscribers to Lumbermen's Reciprocal Association as determined by said court in cause No. 51867, pending in said court.

The defendant offered in evidence certain cross-interrogatories and their answers, but upon objection by plaintiff they were excluded by the court, to which ruling the defendant excepted.

We think the foregoing is a sufficient statement of the testimony offered in view of the disposition we believe should be made of this appeal.

The case was tried upon the theory adopted by the court that all matters and issues made by the pleadings of both parties, such as the organization of Lumbermen's Reciprocal Association, that defendant and about four thousand others were subscribers between July 1, 1929, and July 31, 1930; that the association was insolvent during the time mentioned; and that all subscribers were liable to an assessment of 33 per cent. of earned and booked premiums on policies issued to them between the dates above given, which had all been adjudicated by the district court of Travis county in cause No. 51867 in a class suit instituted by the receiver. In this we believe the trial court was correct. If this is true, none of defendant's forty-nine assignments of error are well taken.

After hearing the testimony and excluding such of it as was considered immaterial to the issues deemed by the court to be pertinent, an instructed verdict for plaintiff was returned, upon which the court rendered judgment as prayed for by plaintiff; 'from this judgment appellant has perfected its appeal.

We believe this appeal should be disposed of by a determination of two questions, they being:

1. Was the suit in Travis county, cause No. 51867, a proper "class suit," such as to bind all subscribers at Lumbermen's Reciprocal Association, holding effective policies between the period of July 1, 1929, and July 31, 1930?

2. Was said judgment a final one, and such as to show upon its face that the court had jurisdiction of the subject-matter and the parties?

There are no statutory provisions under our system of jurisprudence in this state for class suits, but in all jurisdictions where rules of law and equity are considered and applied together and either or both may be administered by the same tribunal, the principles involved in class suits are recognized. In Texas Jurisprudence, vol. 17, p. 5, § 2, it is said: "The distinctions between law and equity have never obtained in Texas. They were not recognized in the earliest times when the civil law of Mexico was administered. They were unknown to the Constitution of Coahuila and Texas. After independence the Constitution of the Republic ignored them. Each succeeding Constitution of the State has expressly denied their existence. At most the distinction in this State is a very narrow one. In some aspects it may be said to be more one of form than of substance," citing City of Dallas v. McElroy (Tex.Civ.App.) 254 S. W. 599 (writ dismissed).

It is said further, in this connection, in Tex.Jur. vol. 17, p. 25, § 22: "Courts of equity have long recognized 'class suits.' Where the persons interested in a subject matter of litigation are very numerous, it is impracticable if not impossible to make all of them parties and prosecute the suit to judgment; and hence in order to prevent a failure of justice, and for the sake of convenience, the court permits less than all of the members of a class to act as representatives of the entire body." Under the above-quoted statement of the law, there is cited the case of City of Dallas v. Armour & Co. et al. (Tex.Civ.App.) 216 S.W. 222, 224 (writ refused). The last-cited case was one in which certain persons instituted a suit for themselves and in behalf of all other persons having a common interest in the subject matter of the litigation; it was there said by the court: "We apprehend that it is unnecessary at this time to cite authority in support of the right in equity to maintain class suits;

that is, suits in which one or more of a numerous class, having a common interest in the subject-matter, sue in behalf of themselves and all others of the class." The court further discussing the status of the "parties" to that suit held that persons named in the pleadings either as plaintiffs or defendants were commonly known as "parties" to the suit and that the expression "party" or "parties" in such connection were technical words and should be given that signification. As a further recognition of the validity and effect of class suits in this state, the court in the case last cited, while discussing who were and who were not "parties" to an action as that term is commonly used in our practice, said: "All others who may be affected indirectly or consequentially [by a judgment] being interested, but not parties. Such, in our opinion, is the status of all members of the given class in class suits, who have not intervened or in some authorized manner been made parties on the record."

The Supreme Court in Hovey et al. v. Shepherd, 105 Tex. 237, 147 S.W. 224, clearly recognized the doctrine. In that case certain citizens of Sweetwater, Tex., had instituted and prosecuted an injunction suit against the railway company, seeking to restrain the company from moving its shops from that city. It was alleged the suit was filed for the use and benefit of all citizens in Sweetwater who had a common interest in the subject-matter with those named as plaintiffs. The trial resulted in favor of the railway company and later other citizens of the city of Sweetwater instituted a similar suit, and it was held the former judgment bound the plaintiffs in the latter suit, although they had not been named as parties plaintiff in the first.

The cases cited above hold persons may be bound by judgments of the courts although they are not named as "parties" thereto, as that term is commonly used by the statutes and courts.

These decisions apply the rule to plaintiffs, but we have not been cited to any authorities, nor have we found any by the courts of this state, where the doctrine has been applied to defendants. We can see no difference in the application of this rule whether persons be "classed" plaintiffs or as defendants. In either case the court determines whether or not the classification is fair and equitable and

342

whether the interests of those to be bound are fairly represented.

It cannot be accurately said, as contended by appellant, that one is never bound by a judgment when he was not a named "party" to the suit, had not been served with process nor waived it, nor otherwise appeared in the controversy. The well-settled doctrine of virtual representation is contrary to such a contention.

It is said in Tex.Jur. vol. 26, p. 231, § 459: "The doctrine of virtual representation is also applied to cases in which there is such a large number of parties in interest as to make it impracticable or inconvenient to bring them all before the court."

By fair analogy, the principle of virtual representation is clearly recognized by the decisions of this state as against defendants in actions other than those of estate in remainder, such as those heretofore referred to. To illustrate, let us suppose a large number of persons owning property should take title in the name of a trustee as such; a suit by a stranger against the trustee in which judgment for the title is rendered for the former against the latter, absent fraud and collusion, will bind all beneficiaries and equitable owners, precisely as if they had each been named as defendants and served with process in the action. As a matter of course, if the trustee should, by fraud or collusion with plaintiff, permit the interests of his beneficiaries to suffer, the judgment would be subject to attack in the proper forum; but in the case before us there is no pretense of fraud, nor is the attack on the judgment a direct one in the court where the judgment was rendered. In a very able opinion by the Commission to the Supreme Court, rendered by Judge Sharp, now of the Supreme Court, in which many authorities are collated, this doctrine is upheld. Cavers v. Sioux Oil & Refining Co., 39 S.W.(2d) 862.

■ We are not unaware of the provisions of Revised Civil Statutes, art. 2050, wherein it is provided that no judgment shall be rendered against a defendant unless upon service, etc., but we do not consider those provisions so rigid as to preclude the rendition of judgments which will affect and even bind persons not named as defendants and who were not served with process, since the article referred to concludes with this expression, "except where otherwise expressly provided by law." The conditions under which defendants may be bound by judgments as herein discussed by us are clearly exceptions to that statutory provision. Based upon the announcements by courts of various jurisdictions, that eminent text-writer, Mr. Freeman, in his work on "Judgments," 5th Ed., vol. 1, p. 951, says: "Among the exceptions to the general rule limiting the effect of a judgment to the parties before the court is one based upon convenience and necessity, known as the doctrine of representation. * * * One illustration of this principle is seen in those cases where the persons affected have a common or general interest or are so numerous that it is inconvenient or impossible to make them all parties and their common situation and interest make it possible or their great number makes it necessary for one or more to represent all the others. * * * Persons who are parties by representation are bound by the judgment to the same extent as those representing them, except that they should be allowed to show fraud or collusion, and in some cases there is a tendency to regard a consent judgment as not binding upon them."

For more than three-quarters of a century the courts of this state have held that remaindermen and reversioners in estates, although not named as parties, were bound by judgments of courts of competent jurisdiction which defeated the estates of those upon whom their interests depended. This is not in conflict with the well-known rule of law that "every person is entitled to his day in court," for indeed he has had his day and his interests were represented by those upon whom his interests depend. Anderson v. Stewart, 15 Tex. 285, 286; Hollis v. Dashiell, 52 Tex. 187; Miller v. Foster, 76 Tex. 479, 13 S.W. 529; Peters v. Allen (Tex.Civ.App.) 296 S.W. 929; Miller v. Texas & P. R. Co., 132 U.S. 662, 10 S.Ct. 206, 33 L.Ed. 487; Story, Equity Pleadings, Sect. 142; Bearden v. Texas Co. (Tex.Civ.App.) 41 S.W.(2d) 447.

For even a longer period of time than that covered by the cases cited from our own jurisdiction, the United States Supreme Court has recognized and upheld judgments rendered in "class suits" when those to be bound were so numerous as to make it impracticable to name and serve them with processes. Mandeville v.

Riggs, 2 Pet. 482, 7 L.Ed. 493; Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; Wallace v. Mrs. Ella Adams et al., 204 U.S. 415, 27 S.Ct. 363, 51 L.Ed. 547.

We are thoroughly convinced that cause No. 51867 in Travis county district court was a proper class suit, in which the court had jurisdiction of the subject-matter and of all interested persons who were subscribers at Lumbermen's Reciprocal Association, and if the judgment rendered in that cause is a complete and final one as disclosed by its terms, appellant could not in the case at bar collaterally attack it as it attempted to do. We further believe, and so hold, the judgment shows upon its face to be final and is not subject to a collateral attack. We shall now give our reasons for having reached these conclusions.

As has been indicated in this opinion, the state instituted an original suit against Lumbermen's Reciprocal Association for receivership in the district court of Travis county. District courts in this state are of general jurisdiction, both in law and equity. Receiverships involve many of the rules of both law and equity. The amount shown to be involved is within the exclusive jurisdiction of the district court. Judgment in cause No. 51867 recites: "It is further ordered, adjudged and decreed that this court has jurisdiction of this cause and the parties hereto and those represented as a class." That judgment further provides: "It is further ordered, adjudged and decreed by the court that this judgment relates to and is binding upon all subscribers at Lumbermen's Reciprocal Association who were subscribers during such period from July 1, 1929, to July 31, 1930, inclusive, or any portion of said time; that all such subscribers constitute a class, whose rights as subscribers at Lumbermen's Reciprocal Association are fairly and truly represented herein by the named defendants appearing and answering herein. * * * That each subscriber stands in the same relation to Lumbermen's Reciprocal Association as those who are named as defendants herein, in their individual capacity and in their capacity as representatives of the whole class of subscribers who exchange contracts of indemnity insurance with each other. * * * And are in truth and in fact a truly representative class of persons, individuals and corporations representing all subscribers during said period of time."

The judgment in cause No. 51867, from which we have quoted, is lengthy and covers in minute detail all matters pertaining to the cause being called for trial, the appearances by the named defendants, and recites the names of counsel representing the twenty-seven named defendants, and that they each came in their respective personal as well as representative capacities. The judgment is regular in form, and shows jurisdiction of the subject-matter and the parties individually and as a class.

There is nothing omitted from the judgment necessary to its validity upon its face. If in fact it should be found wanting in any requisite recitation, upon a collateral attack, such as this one, the well-settled rule of every reasonable presumption as to its validity would be applicable. Burton et al. v. McGuire et al. (Tex.Com.App.) 41 S.W.(2d) 238.

Our courts have held with admirable uniformity that a judgment, regular on its face, by a court of general jurisdiction, is entitled to absolute verity and is not subject to collateral attack. Galbraith v. Bishop (Tex.Com.App.) 287 S.W. 1087, 1089; Cotulla Bank v. Herron (Tex.Civ.App.) 218 S.W. 1091; Mills v. Snyder (Tex.Civ.App.) 8 S.W.(2d) 790; Kreis v. Kreis (Tex.Civ.App.) 36 S.W. (2d) 821 (writ dismissed); Cruse v. Mann (Tex.Civ.App.) 74 S.W.(2d) 545 (writ dismissed). On this point, in the Galbraith v. Bishop case, supra, it was concretely said: "If there is any one principle of law which is worthy of all praise, it is that which imports absolute verity to judgments, valid on their face, as against collateral attack."

The judgment in cause No. 51867 shows the court found from the testimony before it that over and above the available assets of Lumbermen's Reciprocal Association in the hands of the receiver, there were liabilities which would require an assessment of 33 per cent. of the amount of all earned and booked premiums on policies issued to subscribers between July 1, 1929, and July 31, 1930, to raise funds with which to make payment. The decree required of the receiver that he proceed to make such collections, and for that purpose this suit

was instituted against the appellant. The several defenses pleaded by defendant to which exceptions were sustained perhaps would have been available to it in the Travis county case but not in this one, for the reason they appear to have been presented by appellant's class representatives in the trial of the Travis county case and were disposed of by that court adversely to appellant. They were foreclosed by that judgment, and even if such pleas in the answer of appellant had not been stricken by the court on appellee's special exceptions thereto for the reasons urged, they would not have supported testimony in proof thereof upon the trial, over objection, after proof of the judgment in cause No. 51867. We do not hold there was error in sustaining the special exceptions, for we think it was proper, yet, if we are mistaken in this, such rulings were harmless since the same result would have followed when the testimony offered would have been excluded.

Those parts of the answer above referred to were those in which it was claimed one Haliday, a representative of Christie & Hobby, Inc., had represented to appellant it would not be required to pay assessments to cover losses, and the plea that its policies bore indorsements of "suspension of Liability to Assessments."

The record indisputably shows Christie & Hobby, Inc., was the attorney in fact of appellant, and any representation made by such attorney in fact or by its authorized agent to appellant was equivalent to a 'secret arrangement or contract made with itself, and would be ineffective to hold it immune from liability under the contracts of indemnity to other subscribers.

The indorsement of nonliability to assessment pleaded by appellant was claimed to be based on certificates from the Board of Insurance Commissioners of the State of Texas under date of March 18, 1929, and March 17, 1930. But the judgment in the Travis county case heard and determined that issue and found the certificates were issued upon false and fraudulent representations made by the association and held them void along with all indorsements on policies of insurance which included those of appellant. Thus it will be seen that defense was previously adjudicated.

We have not attempted to discuss each of the assignments of error presented by appellant, but have carefully read them all together with the entire record and its brief, and find and so hold there is no merit in any of them in the view we have taken of the two controlling questions above mentioned, which, as stated, control the disposition to be made of the appeal.

There was no proper testimony offered by appellant in support of the defenses pleaded and the trial court properly instructed a verdict for appellee.

We, therefore, overrule all assignments of error presented by appellant and affirm the judgment of the trial court.

Affirmed.