## RICHARDSON et al. v. KELLY.
### No. 9419.

Court of Civil Appeals of Texas. Austin.
April 5, 1944.

Rehearing Denied April 26, 1944.

Samuels, Brown, Herman & Brown, of Ft. Worth, Milburn E. Nutt, of Wichita Falls, Merrill & Scott and Wood, Gresham, McCorquodale & Martin, all of Houston, A. E. Brooks and Thorpe Andrews, both of Ft. Worth, and Sleeper, Boynton, Darden & Burleson, of Waco, for appellants.

Marion B. Solomon, of Dallas, for appellee.

BLAIR, Justice.

Appellants, Sid W. Richardson and Richardson Oils, Inc., filed this proceeding in the 98th District Court of Travis County, Texas, being cause No. 65,080, styled Sid W. Richardson et al. v. Keith Kelly, Receiver of National Indemnity Underwriters of America and C. H. Verschoyle, Inc., its attorney in fact, as a bill of review to set aside a judgment rendered by said 98th District Court in cause No. 63,621, styled Keith Kelly, Receiver of National Indemnity Underwriters of America and of C. H. Verschoyle, Inc., v. Nick Linz et al., wherein the receiver sued 29 persons, firms, or corporations as defendants and as class representatives of 3,200 subscribers at the NIU, to fix their liability for an additional annual assessment or premium, and recovered judgment against each subscriber individually for an amount equal to an additional assessment or premium for each year of the insolvency period, which was from September 30, 1936, to December 28, 1937, and during which insolvency period some 1,450 claims on policies of insurance issued at the NIU, aggregating about $400,-000, arose. Several groups of subscribers, aggregating 123, filed pleas of intervention and made common cause with Sid W. Richardson and Richardson Oil, Inc., to set aside the assessment judgment, which had become final. They alleged that certain conduct of the receiver in procuring the assessment judgment amounted to fraud, and that appellant subscribers at the NIU had a meritorious defense to the assessment, in that their respective contracts limited their liability "to the amount of the premium deposit and the application fee provided for in this policy." The trial court heard these matters together and at length, the statement of facts containing 726 pages, which in part explains the several hundred pages of powers of attorney, the applications for certificates to do business, and policies issued at the office of NIU before and during the insolvency period, photostatic copies of the originals being under the order of the court sent up with the record. The trial court rendered judgment declaring that the assessment judgment in cause No. 63,621 was valid against the attacks made upon it by plaintiffs and intervenors, and upon the cross-action of the receiver rendered judgment against each of the plaintiffs and intervenors, individually, for the amount of the assessment found to be due by them, aggregating about $77,000. From such judgment or judgments plaintiffs and intervenors, appellants here, have prosecuted this appeal.

From the pleadings and evidence and the briefs of the parties, the trial court apparently determined four questions, which are presented for review here, as follows:

1. That the suit of appellants is a collateral attack upon the assessment judgment or decree rendered in cause No. 63,-621.

2. That appellants were not diligent in keeping up with the receivership proceedings and in ignoring assessment notices sent out by the receiver.

3. That the receiver was not guilty of misconduct in procuring the assessment judgment.

4. That appellants did not show or prove a meritorious defense to the assessment liability determined against them by the assessment judgment or decree in cause No. 63,621.

■ The trial court correctly determined the fourth question. In consequence, a decision of the first, second and third questions need not be made. Suffice it to say, the evidence would support implied findings of the trial court that appellants wanted diligence in not proceeding to set aside the 'assessment judgment complained of before it became final, and that the receiver was not guilty of misconduct amounting to fraud in obtaining the assessment judgment in cause No. 63,621. We prefer, however, to base our decision upon the issue that appellants did not show or prove a meritorious defense to the assessment liability of the subscribers at the NIU, rather than upon the practice questions. The trial court gave appellants a full trial of the issue and as if no judgment had been rendered in cause No. 63,-621. The controlling facts on the issue will be stated in substance.

In 1933, the NIU began operations as a reciprocal or interinsurance exchange, acting through its attorney in fact, C. H. Verschoyle, Inc., and undertook to organize the plan or scheme of writing insurance authorized by the provisions of Arts. 5024–5033, R.S. 1925. It issued policies insuring the subscribers thereat against liability for injuries or death of their employees under the provisions of the Workmen's Compensation Laws, which constituted about two-thirds of its business. It wrote automobile liability insurance under the statutes applicable thereto, and also a small amount of fidelity bond and other insurance. The assessments or premiums paid by the subscribers were fixed by the State Board of Insurance Commissioners at the same rates as fixed for all other insurance companies writing the same character of insurance. All application fees, assessments or premiums paid by the subscribers were commingled and placed in one "general fund," regardless of the nature of the power of attorney or the nature or kind of insurance contracts, and all losses or claims arising under all of the policies issued at the exchange or association were paid out of said general fund. The NIU never at any time segregated its various lines of insurance and made no separate assessments or segregation thereof for each line of insurance written, but continuously operated as a unit or association writing the various lines of insurance contracts under which all subscribers at the exchange undertook to indemnify each other for the loss covered.

On December 28, 1937, the 98th District Court of Travis County rendered judgment in cause No. 59,427, styled State of Texas v. National Indemnity Underwriters of America and C. H. Verschoyle, Inc., its attorney in fact, declaring the NIU to be insolvent during the period from September 30, 1936, to December 28, 1937, and appointing Jim Gaddy Norris as receiver to wind up its affairs. Norris was succeeded by Keith Kelly, who was in turn succeeded by Herbert Marshall, the present receiver.

During his tenure each receiver sought to ascertain who were subscribers at the NIU and who held claims against it. On December 5, 1939, Receiver Kelly mailed a post card to some 3,200 subscribers, informing each subscriber of the receivership of NIU; that he was the receiver; that NIU was insolvent from September 30, 1936, to December 28, 1937; that an assessment was necessary to pay claims in the sum of about $400,000 arising during the insolvency period; and that the amount of the assessment would have to be a sum equal to the amount of premiums booked and earned on the policies held by each subscriber during the insolvency period, which should be paid immediately, so that the receivership might be closed.

On June 1, 1939, under authority given in cause No. 59,427, Receiver Kelly brought the first assessment suit in said 98th District Court of Travis County, being cause No. 61,778, styled Keith Kelly, Receiver, v. Sid W. Richardson et al., naming 189 subscribers at the NIU as defendants, and seeking to establish their joint and several

liability for $747,000, which amount was alleged to be owing by the NIU; and that the subscribers were liable under the terms of the contract and power of attorney attached to the petition. Defendants Sid W. Richardson and Houston Transportation Company filed pleas of privilege and other defendants filed pleas in abatement, contending that the receiver had no authority to sue; that the suit was prematurely brought; and that the power of attorney attached to the petition limited the individual liability of each subscriber at the NIU to not more than one additional premium. On December 9, 1939, the receiver dismissed this suit without disposing of the pleas of privilege or other pleas in abatement.

Between September 28, 1939, and December 5, 1939, the receiver compromised and settled with several subscribers on the basis of their liability being for one additional annual premium, which the court in cause No. 59,427, the receivership proceeding, authorized and approved, the aggregate amount so collected being several thousand dollars.

On March 25, 1940, the receiver filed in cause No. 59,427 his report of the claims against the NIU, and the master's report followed the same list, and on May 23, 1940, the court entered judgment fixing liabilities of the receiver at $340,204.26, and leaving other claims to be established. In the same cause another order was entered on April 1, 1940, authorizing and approving the settlement of another subscriber's liability for $750. And on June 29, 1940, the court authorized the receiver to bring an assessment suit against the subscribers at the NIU to pay a then existing deficit of approximately $400,000.

On July 11, 1940, Receiver Kelly filed the assessment suit in cause No. 63,621, and after a hearing on February 1, 1941, the trial court rendered the judgment here complained of on March 8, 1941, which became final on April 8, 1941. In the judgment the court recited that 1,450 claims, aggregating $344,972.40, had been established against the NIU; that there existed potential liabilities of $55,000; that unpaid receivership expenses were $5,509.43; that reasonable future receivership expense would be $75,000; that assets on hand amounted to $1,787.98; and that therefore a deficit of $478,693.93 existed at the receivership. The court further found that this deficit existed by and through the operations of NIU during the insolvency period from September 30, 1936, to December 28, 1937, inclusive; the total amount of premiums booked and earned on policies in force during the insolvency period was $401,361.05; and that "it therefore requires all of the above amount of booked and earned premiums to substantially make up the figure of $478,693.93, which sum, if collected, will be sufficient to pay a substantial dividend on claims allowed and approved by this court, and the expenses of future administration * * *."

The court further found and decreed: "And it appearing to the court that such an assessment of one additional annual premium booked and earned on each insurance policy carried by each of said Subscribers at National Indemnity Underwriters of America operated by C. H. Verschoyle, Inc., attorney-in-fact, during any part or all of the said period beginning September 30, 1936, and ending December 28, 1937, will be the most equitable, practical and economical manner in which the liabilities of the Subscribers and of the Exchange may be discharged."

The judgment further provides that the "liabilities decreed shall be several as to each of such subscribers during the period of time from September 30, 1936, to December 28, 1937, inclusive, and not joint."

The sole defense urged by appellants to this judgment was that they had so contracted by their powers of attorney on file with the Board of Insurance Commissioners that they were not liable beyond the premiums paid for the losses incurred at the NIU. Four powers of attorney were introduced on this issue. They will be referred to as Nos. 1, 2, 3 and 4.

Power of Attorney No. 1: This power of attorney was the one filed annually with the Board of Insurance Commissioners and was used exclusively from the organization of NIU in 1933 until December 31, 1935, and with only a few exceptions was the power of attorney signed and filed with the application for insurance by all subscribers at the exchange office of NIU continuously through its insolvency period. As to the liability of each subscriber it provided: "That the amount exchanged for me during any year shall not exceed double the amount of my premium for that year."

It further provided that: "This Power of Attorney shall also apply to any additional protection hereafter applied for in the same manner as if written in this

schedule, and my limit of indemnity to be modified accordingly."

This same 'form of power of attorney was attached to the sworn annual statement and application to do business required to be filed with the Board of Insurance Commissioners for the years 1933, 1934, and 1935. These sworn statements consisted of interrogatories prescribed by the Board and answers thereto by the applicant. This power of attorney No. 1 was attached to the petition in the first assessment suit filed by the receiver, and it was made the basis of the assessment liability of the subscribers as fixed by the judgment in cause No. 63,621, here under attack.

█ As ground for setting aside said assessment judgment in cause No. 63,621, and as a meritorious defense to the additional assessment, appellants alleged that power of attorney No. 1 had been superseded during the insolvency period of NIU by powers of attorney Nos. 2, 3 and 4, which were alleged to have been filed with and approved by the Board and used exclusively by the subscribers at the exchange during the insolvency period; and which were alleged to have limited the liability to the premium paid for each year, or to the amount thereof. Under this phase of the meritorious defense issue the burden was upon appellants to prove these allegations. This they did not do.

Power of Attorney No. 2: This power of attorney undertook to limit the liability of the subscriber at the NIU as follows: "The amount exchanged for me on any one risk shall in no case exceed the amount herein subscribed by me; and provided, further, that any liability, in addition to premiums charged in accordance with insurance or indemnity contracts issued to me, shall be limited to the surplus money as outlined herein."

This form of power of attorney was not otherwise different in any material particular from the form used in 1933, 1934, and 1935. The only appellant shown to have executed power of attorney No. 2 was Houston Transportation Company, which held an automobile policy and a workmen's compensation policy during the insolvency period. It was attached to the application and sworn annual statement of December 31, 1935, and was filed with the Board on April 1, 1936. The sworn statement was upon the same form interrogatories as the previous years, and the answers in all ma-

terial particulars were the same as made in all previous sworn annual statements. The portions material are as follows:

"3. Have there been included in this statement proper reserve to cover liabilities which may have been actually incurred on or before December 31, but of which no notice was received until subsequently? Answer—Yes.

"4. Do your subscribers limit their several liability in the event of current losses exceeding current premium deposits received and accumulated funds? Answer—Yes.

"5. To what extent is the liability of the subscribers limited? Answer—One years premium.

"19. Has any change been made during the year of this statement in the form of Policy, form of Power of Attorney, location of the office of the Exchange? Answer—None.

"24. Are the accounts so kept as to disclose the individual account of each member? Yes.

"27. Do you require that an application and Power of Attorney, both signed by the subscriber, be on file at this Exchange prior to the issue of a policy? Yes.

Section 5 of the sworn application, dated April 1, 1936, is as follows: "Section 5: That the maximum amount of indemnity upon any single risk does not exceed Ten Thousand Dollars, and that the undersigned Attorneys have examined and caused to be examined the commercial rating of Subscribers as shown by the reference book of a commercial agency (viz., R. G. Dunn and Company and The Bradstreet Company) each having at least one hundred thousand subscribers, and that it has been found and ascertained upon such examination or from other information in the possession of said Attorneys that no subscribers has assumed on any single risk an amount greater than ten per cent of the net worth of such subscriber, except as provided in the workmen's compensation act with reference to the non-limitation of the maximum amount of indemnity upon any single risk and the subscriber's liability, which shall not exceed 'Double the amount of my premium for that year.'"

This portion of the sworn application was the same as all previous applications shown to have been filed with the Board, all of which stated that "the subscribers

liability, * * * shall not exceed 'Double the amount of my premium for that year.'"

The permit issued by the Board of Insurance Commissioners May 12, 1936, states: "This is to certify that C. H. Verschoyle, Inc., Attorney-In-Fact, National Indemnity Underwriters of America, Fort Worth, Texas, has, according to sworn statement, complied with all requirements of law applicable thereto * * *."

The fact that power of attorney No. 2 was executed by only one subscriber at the exchange does not establish the allegation of appellants that it was used exclusively during the insolvency period.

Power of Attorney No. 3: This power of attorney was attached to the sworn annual statement of December 31, 1936, sworn to on May 17, 1937, filed with the Board on the same day, and the permit issued May 29, 1937. The interrogatories and answers were the same as those hereinabove quoted, affiant stating that the subscribers limited their liability to one additional annual premium, and that the form of the power of attorney had not been changed. The limitation of liability clause reads: "That my liability, in addition to the premiums charged in accordance with insurance or indemnity contracts issued by me, shall be limited as provided by law."

This power of attorney was shown to have been executed only by Marine Junk Company, on April 20, 1937, which was about one month before it was filed with the Board on May 17, 1937, and, as stated with respect to power of attorney No. 2, appellants did not establish their allegation that power of attorney No. 3 was used exclusively during the insolvency period.

▇ It may be here observed, however, that this power of attorney merely undertook to provide as to the subscriber signing it, that "my liability shall be limited as provided by law." The law does not prescribe the subscriber's liability, and in consequence the words used are inoperative. Pink v. Town Taxi Co., 138 Me. 44, 21 A.2d 656. Whether a subscriber may by contract limit his liability is not involved under the phase of meritorious defenses here under consideration.

Power of Attorney No. 4: This power of attorney was executed by American Auto Salvage Company on April 8, 1937, and by Hood County Dairy on June 16, 1937. It was never filed with the Board and in consequence appellants abandon it

and take the position that only agreements filed with and approved by the Board are effective as notice to the world as to their contents. It may be observed, however, that this power of attorney sought to limit the liability of the subscriber as follows: "My liability, in addition to the premiums charged in accordance with insurance or indemnity contracts issued to me shall be limited to the surplus accumulated from my money as outlined herein, unless otherwise provided by law."

The foregoing facts summed up show that only one subscriber executed power of attorney No. 2, and one executed power of attorney No. 3, during the insolvency period of NIU. Power of attorney No. 4 was abandoned, but it was executed at the exchange by only two subscribers during the insolvency period. On the other hand, the undisputed facts show that appellant Sid Richardson executed power of attorney No. 1 in 1933 and 1934, and did not execute any other power of attorney during the insolvency period. The records at the exchange office, as testified to by Receiver Kelly, show that it was not the custom for subscribers to execute a new power of attorney upon renewal of their insurance. All such subscribers come under the terms of power of Attorney No. 1, which provide that it "shall apply to any additional protection hereafter applied for in the same manner as if written in this schedule, and my limit of indemnity to be modified accordingly." The undisputed proof also shows that numerous other appellants executed only power of attorney No. 1 during the insolvency period. J. G. Vaughn who was in charge of the affairs at the exchange office during the year 1937, testified that the association continued to use the "old form," which was power of attorney No. 1, during the insolvency period at the office of the exchange. Thus it was shown that the old form power of attorney was used exclusively at the office of the exchange prior to January 1, 1936, and after that date and consistently during the insolvency period, except the one instance as to power of attorney No. 2, and the one instance as to power of attorney No. 3.

▇ Under the foregoing facts the trial court could have reasonably inferred that by actual operation during the insolvency period the subscribers at the NIU intended to and did retain the provision of power of attorney No. 1, limiting the liability of the subscribers thereat to one additional

annual premium for any year of operation as was determined and fixed by the assessment judgment in cause No. 63,621, here under attack. In consequence, the trial court correctly held in the instant case that appellants failed to establish a meritorious defense to the liability of the subscribers at the NIU as determined and fixed by the judgment in cause No. 63,621, and therefore correctly declared that judgment to be valid.

Our foregoing conclusions render unnecessary a construction of the powers of attorney relied upon by appellants to determine whether either of them limits the liability of the subscribers at the NIU to the annual premium paid. Since these powers of attorney were not used at the exchange of the association during the insolvency period, they become immaterial.

Nor is it necessary to determine whether under applicable statutes the subscribers at a reciprocal association writing the several kinds of insurance written by the NIU may limit their liability to less than full payment of the losses covered by their insurance contracts. Power of attorney No. 1 limits the liability of subscribers at the NIU association to one additional premium for any year, and the judgment in cause No. 63,621, here under attack, fixed their liability accordingly. Appellee seeks to sustain this judgment and appellants do not seek to set it aside upon the ground that power of attorney No. 1 does not authorize the additional annual premium or assessment, but solely upon the ground that it had been superseded by the powers of attorney relied upon by them, which they contend limited their liability to the premium or assessment paid each year under their insurance contracts. Manifestly, appellants would not be interested in setting aside the judgment in cause No. 63,621, limiting their liability to one additional premium under power of attorney No. 1, unless the powers of attorney relied upon by them were substituted therefor. Without the limitation of liability fixed by power of attorney No. 1, this liability would be for the full amount of the losses sustained under their insurance contracts, which under the facts of this case would be much greater, because the claims at the receivership amount to about $478,000, and the additional annual assessment required to be paid under the judgment is only about $402,000.

Appellants seem to further contend, however, that since power of attorney No. 2 and power of attorney No. 3 were the only ones filed with and approved by the Board, and certificates issued to do business thereunder by the Board during the insolvency period of NIU, and since when so filed and approved they were notice to the world of the provisions and limitations contained therein, the attorney in fact had no authority to issue insurance contracts for the subscribers except as provided for in each such power of attorney, because the provision thereof as to limitation of liability of the subscriber is the controlling factor with respect to the contract of each subscriber with other subscribers at the association. A complete answer to these contentions is that the subscribers themselves executed the form of power of attorney used at the exchange during the insolvency period, which was, except as to one appellant only, power of attorney No. 1, and which limited the liability of the subscribers to one additional premium or assessment for each year. The only reasonable and fair deduction that can be made from these facts is that the subscribers intended to and did retain the benefits of the limitation of liability as contained in power of attorney No. 1.

Another complete answer to these contentions is that, as above stated, the Board issued each certificate to do business upon the sworn statements and representations made in the application, the powers of attorney relied upon being attached thereto as a part of the agreement, to the effect that the subscribers at the NIU limited their liability to one additional annual premium or assessment for each year; and that no change had been made in the power of attorney used at the association or exchange office. These sworn statements and representations are contrary to the contention now made that in each power of attorney attached thereto as a part of the agreement, the subscribers had limited their liability to the annual premium or assessment paid. The fact that the subscribers executed the old form power of attorney during the insolvency period conclusively shows that they either knew nothing of any attempted change sought to be made in the power of attorney by their attorney in fact, or that they ignored and repudiated it, or that they preferred to live up to the sworn statements

and representations filed with the Board throughout the existence of the association, to the effect that they limited their liability to one additional annual premium for each year. And under the facts stated the rule of estoppel would inhibit appellants from making the contentions here urged by them.

By another point appellant Sid W. Richardson and appellant Houston Transportation Company raise a venue question as to the cross-action asserted by the receiver against them herein. The cross-action asserted by the receiver was against each plaintiff and intervenor appearing and seeking to set aside the assessment judgment rendered in cause No. 63,621, which, as herein held, fixed the liability of each subscriber at the NIU during the insolvency period for "one additional annual premium booked and earned on each policy carried by each." Neither of the two appellants named filed a plea of privilege to the cross-action asserted, but each filed a plea in abatement, contending that the venue of the cross-action had been previously adjudicated in the first assessment suit, cause No. 61,778, when the receiver dismissed that suit after appellants had filed therein their pleas of privilege to be sued in their respective domicile, but without having such venue issue determined.

The subject matter of the previous assessment suit was not the same as the subject matter of the cross-action asserted by the receiver herein. The subject matter of each assessment suit was to determine whether the receiver was entitled to recover a class judgment against the subscribers at the NIU to discharge the liabilities incurred by the association during the insolvency period. The second assessment suit, cause No. 63,621, merely determined that each subscriber at the association was liable for "one additional premium booked and earned on each policy carried by each" during the insolvency period. That such a class suit may be brought against the subscribers at a reciprocal association is settled in this State. Southern Ornamental Iron Works v. Morrow, Receiver, Tex.Civ. App., 101 S.W.2d 336, error refused; McLean v. Morrow, Tex.Civ.App., 137 S.W.2d 113. But the assessment suit did not determine the amount of the liability of each subscriber for the additional annual assessment on each policy held by him. The amount of the premium due on any policy held by appellants, plaintiffs and intervenors herein, was the sole subject matter of the

cross-action filed by the receiver. As to each appellant he alleged and proved the amount so due, and recovered judgment therefor; and no question is here raised by any appellant that such amount was not correct.

The assessment decree in cause No. 63,621 did not determine the amount each subscriber was due thereunder, but such matter was left to later be determined between the receiver and each subscriber. In consequence, the receiver later filed a motion in the receivership proceedings, cause No. 59,427, showing that he had obtained the assessment judgment in cause No. 63,621, here under attack, and asked permission to settle or compromise any claim against any subscriber, or to sue therefor, which was granted. The venue of each suit to determine the amount of the liability of any subscriber would be in the county of his residence. Since the venue as to the cross-action had never been determined, it could only be raised by a plea of privilege, and none was filed by any appellant.

By two additional points, appellant Sid W. Richardson and appellant Houston Transportation Company contend that the trial court had no jurisdiction to render judgment in this proceeding, holding and declaring that the judgment rendered in cause No. 63,621 was a valid and binding decree; and in rendering judgment against said appellants on such findings and conclusions, for the reason that it had theretofore been judicially determined by proceedings in the previous cause No. 61,778 that the exclusive venue and jurisdiction of the persons of each of said appellants with respect to the subject matter in cause No. 63,621 was in Tarrant County as to Sid W. Richardson, and in Harris County as to Houston Transportation Company; and further that neither of the appellants was a defendant except as a class defendant not served with citation in said cause No. 63,621; and that none of the defendants as representatives of the class urged as a defense for the class represented that the venue question had been adjudicated with respect to the cause of action asserted in the previous suit No. 61,778.

The court had jurisdiction to render the assessment judgment in cause No. 63,621 as a class suit, determining the liability of each subscriber at the NIU for an assessment to pay the obligations in-

curred at the association during the insolvency period. That judgment had become final. Appellants, plaintiffs and intervenors, themselves brought this equitable bill of review proceedings to set aside the judgment rendered in cause No. 63,621, and thereby voluntarily submitted themselves to the jurisdiction of the court for that purpose. They sought to set aside the judgment solely upon the ground that their liability had been limited by certain powers of attorney which they alleged were used during the insolvency period at the association. After hearing them fully upon this issue, the trial court held that the judgment sought to be set aside was valid; which action we affirmed. In consequence, it can make no difference whether the suit was improperly filed as to venue in Travis County, nor as to whether the class represented or the appellants had not been served with citation in cause No. 63,621. This judgment being valid, or only voidable upon showing a meritorious defense thereto in this equitable proceeding, which appellants failed to do, no venue question can arise as to the subject matter of cause No. 63,621, nor as to the jurisdiction of the court to determine the validity of such judgment against the attacks made by appellants herein. Barton v. Montex Corporation, Tex.Civ.App., 295 S.W. 950.

The judgment of the trial court is affirmed.

Affirmed.