SID W. RICHARDSON ET AL V. KEITH KELLY, RECEIVER.

No. A-196. Decided December 29, 1945.
Rehearing overruled February 13, 1946.
(191 S. W., 2d Series, 857.)

*Samuels, Brown, Herman & Scott* and *John M. Scott,* all of Fort Worth, *Milburn E. Nutt,* of Wichita Falls, *Wood, Gresham, McCorquodale & Martin,* of Houston, *Sleeper, Boynton, Darden & Burleson,* of Waco, for Richardson et al, and *Merrill & Scott* and *Sam R. Merrill,* for Houston Transportation Company, all petitioners.

The trial court and the Court of Civil Appeals both erred

in refusing to set aside the judgments in the former proceeding against these petitioners as the litigation in that case was wholly inadequate to insure a fair representation of the absent and uncited members of the class and in being so conducted by the receiver as to circumvent a full and fair consideration of the issue involved, and these petitioners have been deprived of their property without due process of law. United States v. Johnson, 87 L. Ed. 1027; Royal Pet. Corp. v. McCallum, 134 Texas 543, 135 S. W. (2d) 958; First Natl. Bank v. Hannay, 123 Texas 203, 67 S. W. (2d) 215; 30 C. J. S. 578.

*Marion B. Solomon,* of Dallas, for respondent.

Reciprocal organizations can create funds only by deposits of their subscribers and the very nature of the company requires an assessment to create the reserve fund when premiums become insufficient and that is the only way in which the statute can be obeyed. In becoming members of the reciprocal the parties have in law so contracted and the proper method of establishing an assessment against the members of an insurance organization is by a class proceeding. Sergeant v. Goldsmith Dry Goods Co., 110 Texas 482, 221 S. W. 259; Hartford Life Ins. Co. v. IBS, 237 U. S. 662, 35 Sup. Ct. 692, 59 L. Ed. 1165; Irwin v. Missouri Valley Bridge & Iron Co. 19 Fed. (2d) 300.

MR. JUDGE BREWSTER delivered the opinion of the Court.

On May 2, 1945, this court handed down an opinion in this cause which a majority of the court as now constituted hold was erroneous. Accordingly that opinion is withdrawn, the judgment entered thereon is set aside, and the following is substituted as the opinion of the Court.

This is a bill of review filed by Sid W. Richardson and Richardson Oils, Inc., petitioners, against Keith Kelly, as receiver of National Indemnity Underwriters of America (NIU) and of C. H. Verschoyle, Inc., attorney in fact of NIU, respondent, to vacate a judgment rendered by the district court of Travis County. Numerous parties intervened as plaintiffs, and one of them, Houston Transporatation Company, is a petitioner. A trial court judgment, adverse to plaintiffs and intervenors, was affirmed by the court of civil appeals. 179 S. W. (2d) 991.

NIU was an interinsurance exchange, organized under Arts. 5024 to 5033, R. S., 1925. Insurance against claims under the workmen's compensation statutes was its principal business, although it wrote automobile liability, fidelity bond and other

insurance. Petitioners and some 3200 others became members by executing a power of attorney by which each appointed Verschoyle attorney in fact to act in the name of each, to exchange indemnity contracts among the subscribers and to bind them on applications by other subscribers on such terms and conditions as Verschoyle might deem proper, to adjust and pay off claims under subscriber contracts, to demand, receive and disburse all moneys due by subscribers, "to accept services of process and to appear for me in any suits, actions or proceedings and bring, prosecute, defend, compromise, settle or adjust same," and "to perform every act not herein specially mentioned that could be performed in relation to any contract thereby authorized."

On December 28, 1937, upon petition of the State of Texas against NIU and Verschoyle, its attorney in fact, the district court of Travis county adjudged that NIU was insolvent from September 30, 1936, to December 28, 1937, and appointed one Norris as receiver to liquidate its business. Norris was succeeded by Kelly and Kelly by Herbert Marshall.

On June 1, 1939, Kelly, receiver, sued NIU, petitioners and 190 other defendants in cause No. 61778 in the district court of Travis county seeking to hold them liable *as partners* for $747,000 as judgments and other liabilities due by NIU. Petitioners Sid W. Richardson and Houston Transportation Company filed pleas of privilege which were controverted by Kelly, but no disposition was ever made of them. On December 9, 1939, on motion of Kelly, the case was dismissed "without prejudice."

On December 11, 1939, Kelly mailed post card notice to all subscribers that claims aggregating $400,000 had been established against NIU and that, to pay them, "it is necessary that all subscribers to this reciprocal during the period of its insolvency * * * make payment to me of an amount equal to one annual premium on all policies held or contracted for by said subscribers."

On June 29, 1940, Kelly filed in the receivereship action a motion stating that the liabilities of NIU exceeded its assets by some $400,000 and asking authority to collect from its former subscribers "what is termed an assessment, because of their membership." The court ordered Kelly to file "such suit for the purpose of establishing such liability against said former subscribers, in order to collect such assessment for which they may be liable, the form of said suit to be determined by the said Receiver."

On July 11, 1940, pursuant to this order, Kelly, as receiver and trustee for NIU and Verschoyle, filed suit in cause No. 63621 against 28 named defendants "and all other subscribers and policyholders" of NIU during its insolvency, alleging that "each and all of said subscribers are obligated, bound and have promised to pay into the exchange, in addition to the premiums charged in said indemnity contracts, an amount of money equal to an additional annual premium, * * which amount will be necessary to discharge the obligations of the said subscribers for the losses, claims and expenses incurred." Petitioners were not named as defendants, but Kelly's prayer was that the 28 defendants be required, individually and as representatives of all subscribers, to take notice of the suit and that judgment be rendered fixing the liability of each named defendant and all other subscribers during the insolvency period, as a class, and that it be fixed at one additional premium.

In his judgment, rendered March 8, 1941, the trial court found that the named defendants and all other subscribers had authorized Verschoyle to act for them in exchanging reciprocal insurance, to collect moneys due by them and to appear for them in any legal action; that Verschoyle had authority to bind them severally but not jointly; that each subscriber was an insurer as well as an insured and was liable to pay his pro rata part of all losses; that an assessment of one additional annual premium on each policy in force during any part or all of the insolvency period was the most equitable manner in which to pay the liability of NIU; and that the defendants named "are truly representative of all subscribers and fairly and actually represent the whole class of subscribers." It adjudged that the receiver recover from each defendant an amount of money equal to a full annual premium on each policy during the insolvency period and that the *judgment should bind all subscribers because they "constitute a class whose rights * * are fairly and truly representated herein by the named defendants appearing and answering."* (Italics ours.)

Three defendants gave notice of appeal but none was ever perfected, so the judgment became final on April 8, 1941.

This suit was filed May 16, 1941. The plaintiffs alleged that they had no notice, actual or constructive, of the pendency of cause No. 63621, and did not learn of the judgment therein until April 12, 1941, when it was too late to appeal; that as they had been parties to cause No. 61778 they had reason to assume that they would be made parties to any subsequent suit or at least

be notified so that they could intervene; that those sued in cause No. 63621 were persons whose liability was small and were purposely selected so that they would have neither incentive nor ability to defend the suit; that, therefore, Kelly had not proceeded with the degree of fairness and good faith which equity requires in class actions; and that their failure to discover the pendency of the suit or sooner to learn of the judgment therein was not due to any negligence on their part. They alleged that the judgment was invalid because less than one per cent of the subscribers were parties defendant, that of those sued two were dismissed and default judgment was taken against six; that although the others filed formal answer, only five appeared at the trial and they offered no testimony and cross examined no witnesses; that Kelly was negotiating before the trial with other defendants for settlement of their liability, thereby lessening the possibility of a contest; that of the three defendants giving notice of appeal, the liability of one was only $18.00 while Kelly settled with the other two within two weeks after the judgment became final, which precluded any appeal. They alleged, further, that had they known of the suit they would have intervened with "good and sufficient defenses," because under their power of attorney to Verschoyle they were not liable for any assessment, all of which appeared in the application, agreement and power of attorney adopted by all subscribers and filed with the state insurance commission; that, therefore, Kelly's allegation that they were liable for a further assessment was false and a fraud on the court; and that, if construed as a valid adjudication of their liability, the judgment would deprive them of their property without due process of law.

Petitioner Houston Transportation Company, intervenor, alleged that it had three policies with NIU from June 15, 1936, to September 1, 1937; that the power of attorney, applications and agreements by which it became a subscriber did not permit the assessment of an additional annual premium but expressly limited its liability to any surplus from premiums paid; that the demand asserted by Kelly in cause No. 61778 was essentially the same as that asserted in cause No. 63621; that it filed a plea of privilege in cause No. 61778, which Kelly controverted but failed to have heard; that, instead, he dismissed the case after learning that it would defend on the ground of its limited liability, so it had a right to assume that it would be made a party to any other litigation or be notified thereof; that it had no notice of the pendency of cause No. 63621 or of the judgment therein until March, 1942; that it then immediately intervened in this suit; that cause No. 63621, in so far as the judgment

fixed intervenor's liability, was a fraud upon the court and a denial of due process.

By cross action respondent pleaded that the judgment in cause No. 63621 is res adjudicata of the matters sought to be litigated herein and prayed recovery against petitioners and all intervenors for the amounts therein adjudged to be due. In the alternative, he prayed that if the question of the liability of subscribers was reached, the court adjudged an assessment of 276 per cent of premiums booked and earned as the amount necessary to pay the obligations of NIU and the expenses of liquidation.

The trial court held that the judgment in cause No. 63621 was valid and decree that Kelly recover from the plaintiffs and intervenors on his cross action for the assessment liability fixed against them by that judgment.

The court of civil appeals affirmed on the ground that petitioners failed to prove that they had a meritorius defense to the assignment liability asserted by Kelly in cause No. 63621.

■ Petitioners urge that the judgment in cause No. 63621 is void because that suit was not maintainable as a class suit.

That question is foreclosed by the decision in Southern Ornamental Iron Works v. Morrow, 101 S. W. (2d) 336, by the Court of Civil Appeals at Fort Worth, in which an application for a writ of error was refused by this court.

The facts in that case are closely paralled to those in this. Lumbermen's Reciprocal Association was an interinsurance exchange in which the members entered into the same character of contracts and powers of attorney with Christie & Hobby, Inc., as their attorney in fact, binding themselves *severally* to pay their respective pro rata parts of any deficits sustained by the association in the operation of its business not to exceed one additional annual premium. Upon a showing that the association had become insolvent because its liabilities exceeded its assets by $625,483.32, Morrow was appointed receiver to marshal its assets. Morrow filed suit against 28 of the approximately 4000 subscribers of the association, suing them individually and as representatives of all subscribers, alleging that the suit was brought as a class action to establish and fix the assessment liability of all because it was impracticable and impossible to sue and serve with process 4000 subscribers. The court found

that each subscriber of the association was liable under his contract for his respective proportionate part of the deficit and that an assessment of 33 per cent of each premium booked and earned was necessary to meet the deficit. The judgment made the 33 per cent assessment and ordered Morrow, as receiver, to collect it. No defendant appealed. Both the receivership and class suit were brought in the district court of Travis county.

Morrow then sued Southern Ornamental Iron Works in the district court of Tarrant county to recover $1,429.33 as the assessement due by it as subscriber to the association under the class suit judgment. Among other defenses, the defendant pleaded that the class suit judgment was void (1) because it was not named as a defendant in the suit, was not served with process, and did not in any way answer or appear, and (2) because the suit was not conducted against a fair representative class of all subscribers, in that the *interests of the respective subscribers were never to be common nor were the subscribers interested in a common fund but the interests of some were adverse to the interests of others.* Proceeding on the theory that the judgment in the class suit foreclosed any issue as to whether the association was insolvent and what assessment on each premium booked and earned was necessary against each of the 4000 subscribers to liquidate its liabilities because it was predicated upon an express finding that the 4000 subscribers constituted a class whose rights as such were fairly represented by the 28 defendants sued, the trial court rendered judgment against the defendant. This action was affirmed by the court of civil appeals, which said, "We are thoroughly convinced that cause No. 51867 in Travis county district court was a proper class suit." (101 S. W. (2d) 343). Then, with the question squarely presented in an application for a writ of error, this court approved the holding, thereby pointing the bench and bar of this state to a proper method of assessing subscribers at a reciprocal insurance exchange when that necessity arises.

That the method so approved has since been pursued and the effects that would follow a holding now that it is invalid are well stated in an amicus curiae brief filed herein by the attorney general in behalf of the State of Texas, as follows: "In conformity with the statutes as construed by the court in the Farmers Gin Company and the Southern Ornamental Iron Works Company cases cited above, the Attorney General has brought suits to wind up the affairs of several separate reciprocal insurance associations, and has placed them in the hands of the statutory receiver. In three or four of such suits, as in the case at bar, the receiver has brought a class-action suit against

all the subscribers, and the District Court as in the case at bar has determined the amount necessary to be raised to liquidate said companies, and has levied an assessment. The subscribers in whose various reciprocal insurance associations have in more than one thousand instances, in virtue thereof, paid said assessments, and there are now some of these judgments that are being collected under and in virtue of a class assessment. The effects of the court's decision in the case at bar has declared all of said judgments void, and thereby jeopardized the power of the receiver to collect the unpaid assessments levied against those subscribers who have not at this time actually paid same. It also has the effect of saying to all those hundred of subscribers who have paid that the court now finds it (the court) was wrong in holding that they could be bound by a class suit." That statement offers a compelling reason why this court should not now overrule Southern Ornamental Iron Works v. Morrow unless convinced that it is clearly wrong. We are not so convinced. On the contrary, we are satisfied that that decision is sound and well supported by the authorities.

One case cited in that decision is Supreme Tribe of Ben Hur v. Cauble et al, 255 U. S. 356, 41 S. Ct., 338, 65 L. Ed., 673. The Tribe of Ben Hur, a fraternal benefit association, reorganized so that it would have two classes of members, A & B, Class A to embrace all former members and Class B to consist of all new members and such of the old as should transfer to it. The plan required that the mortuary funds of the two classes should be separate and distinct, but that a member transferring from A to B should take with him his interest in the mortuary fund of Class A. 524 members of Class A brought suit in the United States District Court of Indiana to enjoin this reorganization and to "prevent threatened insolvency" of the association. The suit was a class suit brought and prosecuted for the benefit of all members of Class A, of whom there were more than 70,000. After a hearing, a master's report was filed finding that "this was strictly a class suit, *presenting questions of common interest to all the members of Class, A, and affecting their joint interests in funds and in internal management* of the society." The court entered a final decree dismissing complainants' bill for want of equity, which was not appealed from. Later Cauble and other members of Class A who were not parties to the suit, except as members of the alleged class, sought to relitigate the questions settled in that suit, in the state courts of Indiana. In holding that they could be enjoined by the United States district court in Indiana from proceeding with their suit in the state courts, the Supreme Court said: "If the Federal courts are to have jurisdiction in class suits to which they are obviously en-

titled, the decree, when rendered, must bind all of the class properly represented. The parties and subject-matter are within in the court's jurisdiction. It is impossible to name all of the class as parties, where, as here, its membership is too numerous to bring into court. The *subject-matter included the control and disposition of the funds of a beneficial organization,* and was properly cognizable in a court of equity. The parties bringing the suit truly represented the interested class. If the decree is to be effective, and conflicting judgments are to be avoided, all of the class must be concluded by the decree." In its opinion the court cites Smith v. Swormstedt, 16 How., 288, 14 L. Ed, 942, which holds that a class suit is maintainable *"where the subject-matter of the suit is common to all."* (Italics ours.)

In Hartford Life Ins. Co. v. Ibs, 237 U. S., 662, 59 L. Ed., 1165, 35 Sup. Ct. 692, the company issued to one Ibs a certificate of membership on the mutual assessment plan. Later the policy was forfeited by the company because of Ibs' failure to pay an assessment of $35.95, which was his pro rata part of a sum necessary to be raised to meet 145 pending claims, althouh there was sufficient money in the mortuary fund to satisfy them when the assessment was levied. Ibs died without paying the assessment, so his widow brought suit in a state court in Minnesota to recover on the policy, claiming the $35.95 assessment was invalid because moneys then in the mortuary fund were sufficient to liquidate all outstanding claims. The company answered that its rights in that regard had been adjudicated in a suit brought by 31 members of the company in a Connecticut court, "in their own behalf and on behalf of all others similarly situated," directly questioning its power to assess members when it had sufficient margin in its mortuary fund to meet all current claims; that the court had unheld its right to make the assessment. The Supreme Court held that the Connecticut judgment was binding on Ibs and all other members of the company's mutual department, pointing out that *since the fund was created by the contributions of thousands of members, their interest was common.* Then the Court said, "In order that the decree should be binding upon those certificate holders, who were not actually parties to the proceeding, it had to appear that * * * *complainants had an interest* that was, in fact, *similar to that of the other members of the class,* and that it was impracticable for all concerned to be made parties. But, when such *common interest* in fact did exist, it was proper that a class suit be brought * * *. The decree in such a suit, brought by the company against some members. as representatives of all, or brought against the company by thirty certificate holders for 'the benefit of themselves and all other similarly situated,' would be binding upon all other certificate holders." (Italics ours.)

In the Ibs case the court cites, as one supporting authority, Royal Arcanum v. Green, 237 U. S., 531, 35 Sup. Ct., 724, 59 L. Ed., 1089, decided the same day, wherein Royal Arcanum, incorporated as a fraternal beneficiary society to pay death benefits to widows and orphans of members on the assessment plan, had increased its rates by amending its bylaws. Thereafter 16 members filed a suit in behalf of themselves and all other certificate holders attacking the increase as violative of contract rights, but the increase was held valid. Four years later Green, an original member, quit making the increased payments and brought suit to have the increase declared void and to enjoin Royal Arcanum from ever exacting from him any more than his original rate. In holding conclusive the judgment in the class suit that the rate increase was valid, the Supreme Court said, "The accuracy of this conclusion is irresistibly manifested by considering the *intrinsic relation between each and all the members concerning their duty to pay assessments and the resulting indivisible unity between them in the fund from which their rights were to be enjoyed.* The contradiction in terms is apparent which would rise from holding on the one hand that there was a collective and unified standard of duty and obligation on the part of the members themselves and the corporation, and saying on the other hand that the duty of members was to be tested isolatedly and individually by resorting not to one source of authority applicable to all but by applying many divergent, variable and conflicting criteria. In fact their destructive effect has long since been recognized." (Italics ours.)

In the cases reviewed neither the question of joint or several liability nor the fact as to whether the thing sought to be enforced was a right enjoyed by the member of a liability owed by him was a determining factor. The court went beyond those considerations to a common interest in a fund which was created by the common duty of all members to pay assessments and from which their rights to protection from loss were to flow, in determining that the subject matter was such that a class suit prosecuted by or against a few members bound all. As said in Royal Arcanum v. Green, supra, the duty of all members to pay assessments resulted in an "indivisible unity between them in the fund from which their rights were to be enjoyed." As to the effect of two of these cases, a standard writer says, "The rights enforced in such leading cases as Supreme Tribe of Ben Hur v. Cauble and Smith v. Swormstedt are properly denominated as common rights. In these cases the action did not involve joint rights running to or against an incorporated association." 2 Moore's Fed. Prac., p. 2239. So, both in Southern Ornamental Iron Works v. Morrow, supra, and in this case, al-

508

though the liability of each subscriber was several, it was properly recognized that the duty to pay assessments was common to all and resulted in a "unity between them in the fund from which there rights were to be enjoyed," and that, therefore, it was a duty which could be enforced in a class suit. Doubtless that is what led Professor Moore, after observing that the holding in Ben Hur v. Cauble that the *common* rights of certificate holders can be enforced by class suit "has found eager approval," to say: "In the very recent case of Southern Ornamental Iron Works v. Morrow, a member of a reciprocal insurance company resisted collection of an assessment levied against it by the reciprocal. It insisted that it was not bound by a former decree wherein twenty-seven subscribers of the reciprocal were sued as representatives of the 4,000 members, and judgment rendered against them. The fact that a local statute provided that 'no judgment shall be rendered against a defendant unless' he is personally served did not deter the court from holding (1) that the action came under the classification of a 'true class suit,' and (2) that as the representatives were personally served the former adjudication was res adjudicata." 2 Moore's Fed. Prac., p. 2289.

■ Prior to the decision in Southern Ornamental Iron Works v. Morrow it was held in Irwin et al v. Missouri Valley Bridge & Iron Co., 19 Fed. (2d) 300, cert. den., 275 U. S., 540, 72 L. Ed. 415, 48 Sup. Ct. 36, that the members of a reciprocal insurance association could be assessed through the device of a class suit, the opinion stating that the facts of the case bring it "squarely within the holding of Supreme Tribe of Ben Hur v. Cauble," supra. Subsequent cases to the same effect are Mitchell v. Pacific Greyhound Lines, Inc., et al 33 Cal. App. (2d) 53, 91 Pac. (2d) 176, and Gray et al v. Moore (Civ. App.), 172 S. W. (2d) 746, in which latter case this court refused an application for writ of error, for want of merit, and in which the Court of Civil Appeals at Amarillo expressly relied on Southern Ornamental Iron Works v. Morrow in holding that a suit against 32 of 6508 subscribers at a reciprocal insurance association to fix proportionate assessments against all 6508 members to satisfy the unpaid demands of 2356 claimants was "a proper class suit."

As a matter of course, some of the members involved in the three cases last cited held claims and were therefore interested in having the assessments paid while others had no claims pending and so were oppositely interested, nevertheless that fact did not keep the courts from holding that the duty of all subscribers to pay the needed assessments in order to effect the common, contractual purpose to protect all by means of inter-insurance

resulted in a common interest and unity between them and rendered the subject matter of the suit common to all. In other words, no subscriber was "free alternatively either to assert rights or to challenge them," as he was in Hansberry v. Lee, 311 U. S. 32, 85 L. Ed., 22, 61 S. Ct., 115, 132 A. L. R. 741. In one of the cases the court takes notice of the rule that no subscriber at a reciprocal exchange can set off his claim as an insurance against his liability as an insurer. Mitchell v. Pacific Greyhound Lines, Inc., et al, supra. Setoff was expressly prohibited in the class suit judgment in this case.

We adhere to the decision in Southern Ornamental Iron Works v. Morrow, and hold, therefore, that cause No. 63621, under review in this case, was a true class suit, the judgment in which was binding on all who were subscribers at NIU during the insolvency period in its findings that an assessment was necessary, that the liabilities of the association amounted to $478,693.93 and that they were to be liquidated by assessing each subscriber "an amount of money equal to a full annual premium on each policy during the insolvency period."

■ In a supplemental written argument on motion for a rehearing, filed on July 20, 1945, petitioners Richardson and Richardson Oils, Inc., for the first time cite Christopher v. Brusselback, 302 U. S., 500, 82 L. Ed., 388, 58 Sup. Ct. 350, in support of their contention that the judgment under review is void. We believe that decision is in no sence contrary to our conclusion in this case or to Southern Ornamental Iron Works v. Morrow. Brusselback and other owners of bonds issued by Chicago Joint Stock Land Bank, which had been created under the Federal Farm Loan Act, sued certain citizens of Ohio in the District Court of the United States for the Southern District of Ohio as stockholders of the bank, under a section of that Act which provides, "Shareholders of every joint-stock land bank organized under this act shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." Brusselback et al sought recovery of a 100 per cent. assessment on the theory that both the insolvency of the bank and the liability of stockholders for an assessment of 100 per cent. of their stock to pay its creditors had been adjudicated in a previous suit in the District Court of the United States for the Northern District of Illinois. The Illinois suit was against all stockholders, but only those residing in Illinois were served with process; nevertheless Brusselback et al alleged in the Ohio suit that the Illinois action

was a class suit, judgment in which was fully binding on the Ohio defendants although they were not served therein. So, as the Supreme Court noted, the question thus presented was "whether petitioners are bound by the Illinois adjudication, in their absence, of the bank's insolvency, and the amount of the assessment." After pointing out (1) that the Federal Farm Loan Act did not give the Federal Farm Loan Board any power to assess stockholders or a receiver of a defunct joint stock land bank any authority to maintain suit to enforce their statutory liability and did not otherwise set up any machinery to enforce that liability; and (2) that the Ohio defendants had not taken their stock in the face of either a statute or a corporate rule that membership carried with it a possibility that the bank might stand in judgment for them, the court said that the Ohio defendants could not be held to have subjected themselves to a procedure for determining in their absence essential conditions of liability, such as the bank's insolvency and the amount necessary to be assessed against stockholders to liquidate it. Under those circumstances the court said, therefore, that the assessment liability of the stockholders of a joint stock land bank is to its creditors only and that the only way creditors can enforce that liability is "an adversary suit in equity against the stockholders, wherever they may be found." Then it is said that, since the Illinois action was not such a suit, the decree therein was not res adjudicata as to the Ohio defendants.

The full import of the phrase, "an adversary suit in equity against the stockholders wherever they may be found," is clearly stated by the same writer, Mr. Justice Stone, in his later opinion in Russell v. Todd, 309 U. S. 280, 84 L. Ed., 754 60 Sup. Ct. 527, in these words: "As the liability of the stockholders as prescribed by this section is to pay 'equally and ratably,' the sole remedy is by plenary representative suit brought in equity in behalf of all creditors of the bank, in which the existence and extent of insolvency, and the ratable shares of the contribution by shareholders can be ascertained and an equitable distribution made of the fund recovered. But this amount cannot be determined and its distribution effected without resort to the procedures traditionally employed by equity upon a bill for an accounting and for the distribution of a fund brought into its custody." That the suit filed in Illinois did not even purport to be such an action as that described by Mr. Justice Stone as a correct "plenary representative suit" is readily apparent from the following quotation from the opinion of the Circuit Court of Appeals in Brusselback v. Arnovitz, 87 Fed. (2d) 761, 762, in which the court is stating the allegations in the Ohio suit regarding the Illinois suit: "That about October 1, 1932, *certain*

*bondholders* of the bank filed their bill in the United States District Court for the Northern District of Illinois against its stockholders for the purpose of enforcing their individual liabilities under the statute. * * that service was had upon all stockholders found residing in Illinois who for the most part answered; that the cause was referred to a master, who found the bank insolvent in that its liabilities exceeded its assets by approximately $12,000,000 and that an assessment of 100 per cent. against the stockholders would be necessary; that a decree was entered confirming the master's report and making a 100 per cent. assessment against the stockholders, and that the defendants who were before the court were directed to pay such assessments to the receiver." (Italics ours.) In short, the Illinois action was not filed, conducted or adjudicated as a class suit; hence it could not, under the specifications laid down in Russell v. Todd, supra, properly be held that it was such a suit.

We think what we have said is sufficient to show that the holding in Christopher v. Brusselback, supra, in no way militates against the holding in Southern Ornamental Iron Works v. Morrow and that our holding in this case, under the situation before us, is likewise not counter to the decision in the Brusselback case. And doubtless this court so regarded that case when in 1943 it refused for want of merit the application for writ of error in Gray et al v. Moore, supra, wherein one point of error was, "The petitioners were deprived of due process of law in Cause No. 64395, and the class judgment as to them was and is therefore void, and the trial court as well as the Court of Civil Appeals erred in not so holding herein," and in support of which the petitioners argued: "It is well established in the law that there must be an identity or community of interests essential to the class before members of the class can be bound by the actual representation of the named defendants. The interests of the class as a whole must receive actual and efficient protection, otherwise the decree cannot be binding on the class. In the case at bar we find no such identity or community of interest and no actual protection whatever."

A short quotation from Hansberry v. Lee, 311 U. S., 32, 85 L. Ed., 22, 61 Sup Ct. 115, 132 A. L. R. 741 relied on by petitioners, will be sufficient to show that our conclusion in this case is not contrary thereto. It is: "The plaintiffs in the Burke case, 277 Ill. App., 519, sought, to compel performance of the agreement in behalf of themselves and all others similarly situated. *They did not designate the defendants in the suit as a class or seek any injunction or other relief against others than the named defendants, and the decree which was entered did not*

*purport to bind others."* (Italics ours.) It was the judgment in the Burke case which Lee et al claimed was a class judgment res adjudicata of the issues in Hansberry v. Lee. But the court very properly refused to ascribe to it any more force than it claimed for itself.

We are not unmindful of the allegations of petitioners as to the manner in which the receiver selected defendants and proceeded with the litigation in cause No. 63621, as we have detailed them above, their substance being that defendants were named who would have neither incentive nor ability to defend the suit and who could be dissuaded from appealing. The trial judge must have weighed all those matters in light of the testimony, except possibly the receiver's settlement with two defendants after judgment, yet as a part of his judgment he decreed that all subscribers were bound by it because they "constitute a class whose rights * * are *fairly and truly represented herein by the named defendants appearing and answering."* (Italics ours.) In view of that recitation we find nothing in the record which would justify us in holding that the matters complained of resulted in any vice in the judgment. See Gray et al v. Moore, supra, wherein the allegations as to the receiver's purposeful selection of defendants are strikingly like those made by petitioners in this case, yet it was held both that the pleadings were insufficient and that the evidence did not support the claim that the subscribers sued failed to represent the class truly, fairly and adequately.

That nobody appealed from the judgment is not alone of determining consequence. It affimatively appears that there was no appeal in either Southern Ornamental Iron Works v. Morrow or Supreme Tribe of Ben Hur v. Cauble, supra.

We hold that the judgment in cause No. 63621 was neither void nor voidable, therefore it is unnecessary for us to consider other questions raised by petitioners.

Since the class suit judgment was valid and since the only defenses pleaded by petitioners, as cross defendants, were their several attacks on its validity, it only remained for the receiver, in order to recover on his cross action against petitioners, to show that they were subscribers during the insolvency period and the amount of the annual premiums paid by them during that period. There is no controversy in relation to those issues, and that the evidence amply supports the judgment as to them is nct questioned.

Accordingly, both judgments below are affirmed.

Opinion delivered December 29, 1945.

Rehearing overruled February 13, 1946.

Associate Justice Simpson disqualified and not sitting.

MR. CHIEF JUSTICE ALEXANDER dissenting.

I cannot agree with the views expressed in the majority opinion. I therefore respectfully dissent, and I express my reasons therefore as follows:

As shown in the majority opinion, National Indemnity Underwriters of America (NIU) was organized as an inter-insurance exchange under the provisions of Articles 5024 to 4033, Revised Statutes of 1925. The above statutes authorized individuals, partnerships, and corporations, designated as subscribers, to exchange reciprocal or inter-insurance contracts with each other. The statutes required the subscribers to appoint an attorney in fact for them to execute such insurance contracts, and Article 5026 required the attorney in fact to file with the Insurance Commissioner a copy of the contract or agreement under and by which such insurance was to be affected or exchanged, and a copy of the form of the power of attorney or authority of such attorney under which such insurance was to be affected. The statutes did not undertake to fix the extent of the liability of any one subscriber to the others for losses sustained under the policies issued by NIU. It seems to have been contemplated that each subscriber would fix the extent of his liability to other subscribers in the power of attorney filed by him. At any rate, this practice was followed. Most, if not all, of the powers of attorney fixed the extent of liability of the subscriber at the equivalent of one additional premium on each policy taken out by the subscriber. Workmen's compensation insurance was the principal business engaged in by the company, although it also wrote automobile liability, fidelity bond, and other insurance. Petitioners and some 3200 others became members by accepting policies in the company and executing powers of attorney by which each appointed Verschoyle attorney in fact to act in the name of such subscriber. NIU and Verschoyle both became insolvent, and one Norris was appointed Receiver to liquidate the business. Norris was succeeded by Keith Kelly as Receiver, and later Kelly was succeeded by Herbert Marshall.

On June 29, 1940, the court entered an order in the receivership proceeding, in which it was found that the NIU owned unsatisfied debts in excess of $400,000.00, and that it would be

necessary for the Receiver to collect an assessment from each policyholder who held a policy in the defunct concern during the insolvency period, which was from September 30, 1936, to December 28, 1937, and instructing the Receiver to file suit to collect such assessment, "the form of said suit to be determined by the said Receiver."

On July 11, 1940, pursuant to this order, Kelly, as Receiver and Trustee for NIU and as Receiver for Verschoyle, filed a purported class action in cause No. 63621 against 28 named defendants "and all other subscribers and policyholders" of NIU during its insolvency. The petition alleged that each subscriber at the time of receiving a policy had executed a power of attorney, setting out the liability of such subscriber; and that each subscriber by virtue of the application, agreement, and power of attorney became bound severally, *but not jointly,* for his pro rata portion of the indemnity granted under the policies issued by the association, not to exceed one additional annual premium on the policy issued to him. A copy of the power of attorney was attached to and made a part of the petition. The power of attorney provided in part as follows: "Provided, however, that said attorney (in fact) shall not have power to bind jointly subscribers, but he shall have power only to bind severally each subscriber." The petition further alleged that the amount of one additional premium from each subscriber would be necessary to discharge the obligations of the said subscribers for the losses, claims, and expenses incurred.

Petitioners were not named as defendants, and, of course, were not notified of the pendency of the suit, but Kelly alleged that the parties were too numerous to be joined as defendants in a single action, and his prayer was that the 28 named defendants be required, individually and as representatives of all subscribers, to take notice of the suit and that judgment be rendered fixing the liability of each named defendant and all other subscribers during the insolvency period, and establishing the right of said Receiver to collect from each of said subscribers an amount equal to one annual premium on the policy carried by such subscriber during said period.

On March 8, 1941, upon the trial of cause No. 63621 the court found that each of the 3200 subscribers of NIU had bound himself *severally, but not jointly,* to the extent of one additional premium on each policy taken out by him for his pro rata or proportionate part of the losses sustained by the other subscribers under the hazards described in the policies issued to the other

subscribers. It was further found that an assessment of the equivalent of one additional premium against each subscriber was necessary in order to meet the liabilities of the defunct concern. Accordingly judgment was entered against such subscriber of NIU during the insolvency period, whether named in the judgment or not, "in favor of plaintiff for such assessment herein determined and adjudicated to be due, which sum is here fixed as the final liability for assessment against each such defendant Subscriber, whether named herein or represented as a class," and that the assessment so levied "shall not be subject to any offsets for claims and demands, real or asserted, but that such liability shall be only satisfied by payment thereof in full to the plaintiff herein." The judgment further provided as follows: "It is further ordered, adjudged and decreed by the Court that the liabilities decreed herein *shall be several* as to each of such Subscribers during the period of time from September 30, 1936, to December 28, 1937, inclusive, *and not joint.*" (Italics mine.)

On May 16, 1941, Sid W. Richardson and Richardson Oils, Inc., filed this bill of review, seeking to set aside said judgment of the court in Cause No. 63621 on the ground that they had no notice of said proceedings, and that the judgment entered therein was illegal. Shortly thereafter the other petitioners herein intervened.

It will be noted that none of the petitioners now before this Court were named as defendants in the suit which they seek to set aside, and, of course, they were not served with citations therein, yet it was attempted by said judgment to adjudicate their liability for the assessment sought to be imposed upon them by the Receiver.

It is a cardinal principle of our jurisprudence that no person shall be concluded by a judgment of a court either in respect to his person or property in any litigation in which he is not designated as a party or to which he has not been made a party by service of process or appearance. Hansberry v. Lee, 311 U. S. 32, 61 Sup. Ct. 115, 85 L. Ed. 22; Scott v. McNeal, 154 U. S. 34, 46, 14 S. Ct. 1108, 38 L. 5d. 896; Dunlap v. Southerlin, 63 Texas 38, 42 1 Freeman on Judgments, 200; Vogt v. Bexar County, 5 Texas Civ. App. 272, 23 S. W. 1044 (writ refused) ; 33 Tex. Jur. 798; 9 Tex. Jur. 575; 25 Tex. Jur. 472.

To this general rule there is an exception which permits a court under some circumstances to render a judgment in a class or representative suit, to which some members of the class are

parties, which binds other members of the class who are not named as parties thereto. Hansberry v. Lee, 311 U. S. 32, 61 Sup. Ct. 115, 85 L. Ed. 22, 26; Smith v. Swormstedt, 16 How. (U. S.) 288, 14 L. Ed. 942; Supreme Council, R. A. v. Green, 237 U. S. 531, 59 L. Ed. 1089, 35 S. Ct. 724, LRA 1916A 771; Hartford L. Ins. Co. v. Ibs, 237 U. S. 662, 59 L. Ed. 1165, 35 S. Ct. 692, LRA 1916A 765; Hartford L. Ins. Co. v. Barber, 245 U. S. 146, 62 L. Ed. 208, 38 S. Ct. 54; Supreme Tribe, B. H. v. Cauble, 255 U. S. 356, 65 L. Ed. 673, 41 S. Ct. 338; cf. Christopher v. Brusselback, 302 U. S. 500, 82 L. Ed. 388, 58 S. Ct. 350.

In this connection it should be observed that any rule which permits a court to foreclose the rights of one who has had no notice of the pendency of the suit, and who has not had his day in court, is a harsh one which should be applied sparingly and with caution. Hence there are very definite restrictions and limitations on the use of the class action device, and particularly with reference to the character of unity that must exist among the members of the alleged class in relation to the subject matter of the litigation, in order to authorize a judgment that is binding on the absent members.

In the outset I deem it proper to state here that even if the suit in question had been maintainable as a class action, I am of the opinion that it was not properly conducted as such. The Receiver had filed a prior suit for the same purpose, and had named 190 of the subscribers as representatives of the class. Some of those named as defendants in that suit filed pleas to the venue and otherwise contested the suit. The Receiver, upon discovering that the suit would be contested, had it dismissed, and after the furor created thereby had died down he filed the second suit, the validity of which is here under consideration. According to his own testimony he purposely avoided naming as defendants in the second suit any of those who had filed pleas to the venue in the former suit, because he could not maintain venue in Travis County as to them. Thus it will be observed that the receiver purposely avoided joining as defendants any of those who had demonstrated an intention to contest the suit. The record shows that the Receiver sought judgment against the 3200 subscribers. The second suit was brought against only 28 of them as representatives of the class. Three other subscribers intervened. Of those named as defendants in the second suit, including the three who intervened, twelve had liabilities of less than $100.00 each, eleven had liabilities of less than $200.00, three had liabilities of less than $300.00, and the claims against the other five ran from $441.00 to $801.77. On the other hand, many of those not named, if liable at all, owed sums much

larger. For example, one unnamed defendant had a possibile liability of $3,333.04, one of $3,337.28, and one of $5,922.39, and another of $16,247.91. It is thus demonstrated that the Receiver avoided suing those who had such interest as would justify a contest of the suit. During the pendency of the proceedings the Receiver dismissed as to two named defendants, one because he had died while the suit was pending, and the other because of lack of service of process. Six defendants defaulted altogether. Twenty defendants filed answers. On the day of the trial five of them, with the approval of the Receiver and the court, paid into court the small amounts due by them, and thereafter made no further defense. The record discloses that prior to the trial the Receiver discussed settlement with ten of the other defendants who had filed answers. It is not shown that settlements were agreed upon, but thereafter these ten defendants made no further contest. On the day of the trial the Receiver agreed with one defendant who was contesting the suit that if he would not further resist the suit no execution would issue against him. A similar agreement was made with the three subscribers who had intervened in the suit. One defendant with a liability of only $124.87 appeared at the trial but gave no notice of appeal. Only the three remaining defendants excepted to the judgment and gave notice of appeal. Two of them, with whom settlement agreements had been discussed prior to the trial, were settled with shortly after the judgment became final, for much less than the amount adjudged against them. The only other defendant who had excepted to the judgment had a liability of only $18.00. It is apparent that his interest would not justify the expense of preparing the transcript and prosecuting the appeal. The result was that no one prosecuted an appeal from the judgment. The Receiver had by negotiations or otherwise eliminated from the case every one who had the necessary interest and the inclination to make a vigorous defense of the suit.

As heretofore stated, any rule which permits the taking away of one's rights without notice is a harsh one, which must be applied cautiously and with absolute fairness. Good faith must prevail throughout the trial. 21 C. J. 285; 30 C. J. S. 578; Campbell v. Texas & N. O. R. Co., 4 Fed. Cas. No. 2,366, page 1178, 1 Woods 368; Smith v. Williams, 116 Mass. 510; Simpson County v. Buckley, 85 Miss. 713, 38 So. 104. Care must be taken to insure that those named as representatives of the class are fairly represented of the interest or right involved, so that the case may be fully and honestly tried. If this is not done the very foundation for the device fails. Smith v. Swormstedt, 16 How. 288, 14 L. Ed. 942; 30 Am. Jur. 922; Sparks v. Robinson, 115 Ky. 453, 74 S. W. 176. The facts in this case make it very clear

that those who remained in the case as defendants after all of the manipulations above referred to did not fairly represent the interest of the absent members of the class. I cannot give my approval to a judgment obtained under circumstances such as are here involved.

But regardless of the lack of fairness reflected above, I am of the opinion that this suit was not maintainable as a class action. The class action device is not available to a plaintiff as a mere convenience to avoid a multiplicity of suits. It grows out of the necessities of the case and is to be resorted to only where all the parties are otherwise essential, but because of the large number it is impracticable to bring all of them before the court at the same time. Smith v. Swormstedt, supra; Moore's Federal Practice, vol. 2, pp. 2232, 2236. Moreover, in a "true" class action, where the judgment is binding on the absent members of the class, as distinguished from the "hybrid" or the "spurious" class action, where the judgment is binding only on those who join in the suit, the rights sought to be enforced for or against the class must be joint or common to all the members of the class. Smith v. Swormstedt, supra; Moore's Federal Practice, vol. 2, p. 2236. The representative must have an interest which is co-extensive and wholly compatible with the interest of those whom he represents. Moore's Federal Practice, vol. 2, p. 2232. Some authorities express the rule here involved by saying that the rights of the members of the alleged class must be homogeneous. The reason for this requirement is to insure that those of the class who are joined will properly protect the interest of the absent members. The rule assumes that the natural instinct for self-preservation will cause those of the class who are parties to the suit to take all proper steps to protect their own interest, and in doing so they will necessarily protect the interest of all others whose rights are joint or in common with theirs. Where the community of interest is lacking, the reason for the rule disappears and the rule becomes inapplicable.

A few cases will illustrate the character of the common or joint jural relationship which must exist in order to support a judgment in a true class action.

In Hartford Life Insurance Co. v. Ibs, 237 U. S. 662, 35 Sup. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765 the Hartford Life Insurance Company had made larger assessments against is policyholders than was necessary to pay existing claims. Some of the policyholders brought suit on the part of all others of the class to require the company to distribute the accumulated fund on hand among the policyholders instead of retaining it for

the payment of future claims. The Supreme Court held that this was a proper class action because the ownership of the fund thus accumulated was one of common interest to all the policyholders. The Court said:

"The fund was single, but having been made up of contributions from thousands of members their interest was common. It would have been destructive of their mutual rights in the plan of Mutual Insurance to use the Mortuary Fund in one way for claims of members residing in one State and to use it in another way as to claims of members residing in a different state. * * * For, in order that the decree should be binding upon these certificate holders who were not actually parties to the proceeding, it had to appear that Dresser and the other complainants had an interest that was, in fact, similar to that of the other members of the class, and that it was impracticable for all concerned to be made parties. But, when such common interest in fact did exist, it was proper that a Class suit should be brought in a court of the State where the Company was chartered and where the Mortuary Fund was kept." 237 U. S. 662, 670.

In Smith v. Swormstedt, 16 How. 288, 14 L. Ed. 942, the suit was brought by some of the members of the Methodist Episcopal Church South for themselves and as representatives of all other members against some of the members of the Methodist Episcopal Church of the United States as representatives of all other members thereof for a partition of jointly-owned property. This was held to be a proper class action because it involved property in which all the members of the class had a common interest.

In Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 65 L. Ed. 673, 41 S. Ct. 338,. the Supreme Court had under consideration a suit brought by 574 members of Class A of the Supreme Tribe of Ben-Hur to enjoin what was claimed to be an unlawful use of trust funds of said defendant in which all of the complainants and other members of Class A of said Supreme Tribe of Ben-Hur had a common but indivisible interest, and attacking a plan of reorganization adopted by the supreme legislative body of the society. The Court held that the subject matter of the suit included the control and disposition of the funds of the beneficial organization in which all of the members had a common interest, and was therefore the proper subject of a class action. See also Hovey v. Shepherd, 105 Texas 237, 147 S. W. 224; City of Dallas v. Armour & Co., 216 S. W. 222. It will be observed that each of the above cases involved the *rights* of the members of the alleged class in property owned by them in

common. None of them involved an attempt to recover on the *several obligations* of the members of the alleged class.

On the other hand, in the case of Hansberry v. Lee, 311 U. S. 32, 85 L. Ed. 22, 61 Sup. Ct. 115, 132 A. L. R. 741, the Supreme Court had under consideration a case in which various purchasers of lots in an addition had accepted deeds containing restrictions against sale of lots to members of the colored race. Some of the owners of lots in the addition brought suit against some of the owners of other lots as representatives of a class, and sought to cancel the restrictions as against all owners of lots in the addition. The Court held that a judgment in such a suit as a class action was not entitled to the full faith and credit provided for in the Constitution. In discussing this question the Court said:

"The restrictive agreement did not purport to create a joint obligation or liability. If valid and effective its promises were the *several obligations* of the signers and those claiming under them. The promises ran severally to every other signer. It is plain that in such circumstances all those alleged to be bound by the agreement would not constitute a single class in any litigation brought to enforce it." 85 L. Ed. 22, 28. (Italics mine.)

In the case of Ayres v. Carver, 17 How. 591, 15 L. Ed. 179, the complainant sought to establish an equitable title to large tracts of public lands in the State of Mississippi which had been laid off in townships, ranges, and sections. He alleged that he had offered to comply with the law providing for the entry and purchase at private sale of the land as undisposed-of public land, but was prevented from making the entries and obtaining the necessary certificates by the illegal and unwarranted acts of the register at the land office. The suit was filed against the defendants, who constituted all those who had subsequently entered and paid for separate tracts of the land, and to whom patents had been issued. Plaintiff alleged that the defendants were too numerous to be brought before the court in a single action, and asked to be permitted to prosecute suit against all of them by joining only a few. In that case the Court said:

"Without intending to express any definite opinion in this matter, we must say that it is difficult to see any interest or estate in common among these several defendants that would authorize the rights of the absent parties to be represented in the litigation by those upon whom process has been served, and who have appeared to defend the suit. Their title to the land claimed, by the complainant, is separate and independent, without anything in common, it would seem, that could have the effect to make

a decree against one, binding upon the others, or even require them to join in the defense."

In the case of Certia v. University of Notre Dame, 82 Ind. App. 542, 141 N. E. 318, 320, the suit was brought by a plaintiff who owned a lot in a cemetery, on behalf of himself and all other persons having friends and relatives buried in the cemetery, praying an injunction to prevent the burial of the dead in the walks and paths of the cemetery, and causing the removal of bodies so buried therein by the defendants. The court held that whatever right the plaintiff had in the cemetery was confined to the lot owned by him, together with the right of ingress and egress thereto; that such right of necessity belonged severally and peculiarly to the owner of the lot; and that plaintiff owned no such joint or common right with other owners of lots in the cemetery as would authorize him to maintain a class action.

In this connection it will be noted that the powers of attorney sued on in the alleged class action here under consideration provided that the parties were bound *severally, and not jointly,* for the equivalent of one additional premium on each policy carried by the subscriber. The prayer was for a several, and not a joint, judgment, and the judgment actually rendered was *"several as to each such subscriber * *, and not joint."* (Italics mine.) Therefore, regardless of what may have been the liability of the parties under the relations that actually existed among them, the suit here under consideration was on alleged several obligations, and the judgment actually recovered was several, and not joint.

The only cases I have found in which a plaintiff has been permitted to maintain a true class action *against* a class by bringing only a part of the members thereof before the court are cases in which the purpose of the suit was to affect *rights* held *jointly or in common by the members of the class.* I have not found any case in which a plaintiff has been permitted to recover a judgment which would either directly or indirectly impose *a personal obligation* for debt upon the absent members of the class by virtue of an *obligation* executed by the members of the class. Certainly no case can be found in which a plaintiff has been permitted to recover a judgment against the absent members of a class on *several obligations* executed by the members of the alleged class.

The purpose of this suit was to impose a *personal liability* on the members of the class for the debts of the defunct concern.

While the judgment did not determine the final liability of the subscribers for their share of the debts, it did constitute an adjudication of some of the essential elements leading to the ultimate liability therefor. It was therefore an action *in personam* in which jurisdiction over the person of the absent members of the class was essential to the validity of the judgment. Christopher v. Brusselback, 302 U. S. 500, 82 L. Ed. 388, 58 Sup. Ct. 350; Old Wayne Mutual L. Assn. v. McDonough, 204 U. S. 8, 51 L. Ed. 345, 27 Sup. Ct. 236; Pennoyer v. Neff, 95 U. S. 715, 24 L. Ed. 565; Hansberry v. Lee, 311 U. S. 32, 85 L. Ed. 22, 61 Sup. Ct. 115.

It is argued that the suit could be maintained by the Receiver against some of the subscribers as representatives of the others for the purpose of establishing the necessity for and fixing the amount of an assessment against them, much in the same way as a Receiver of a corporation is sometimes permitted to fix an assessment against the stockholders of a corporation. It is true that where an assessment against the stockholders of a corporation is payable upon call of the Board of Directors, the stockholders are bound by the action of the Board in making such a call, and under like conditions they are bound by a valid decree of a court against the corporation made in their absence, directing the corporation to make the call for the assessment. Hawkins v. Glenn, 131 U. S. 319, 329, 33 L. Ed. 184, 191, 9 Sup. Ct. 739; Great Western Teleg. Co. v. Purdy, 162 U. S. 329, 336, 40 L. Ed. 986, 990, 16 Sup. Ct. 810; cf. Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843. Simarily, where a statute provides some sort of reasonable procedure in lieu of personal service by which the shareholders may be brought before the court for the purpose of determining the need for an assessment and the amount thereof, the stockholders are bound by such procedure by virtue of their membership in the corporation. Bernheimer v. Converse, 206 U. S. 516, 51 L. Ed. 1163, 27 Sup. Ct. 755; Converse v. Hamilton, 224 U. S. 243, 56 L. Ed. 749, 32 S. Ct. 415, Ann. Cas. 1913D, 1292; Selig v. Hamilton, 234 U. S. 652, 58 L. Ed. 1518, 34 Sup. Ct. 926, Ann. Cas. 1917A, 104; Marin v. Augedahl, 247 U. S. 142, 62 L. Ed. 1038, 38 Sup. Ct. 452; Chandler v. Peketz, 297 U. S. 609, 80 L. Ed. 881, 56 Sup Ct. 602. But where there is no statute authorizing such procedure, and the directors of the corporation are not authorized to fix the assessment, each stockholder must be a party to the suit and have notice thereof in order to authorize a judgment making such an assessment. Christopher v. Brusselback, 302 U. S. 500, 58 Sup. Ct. 350, 82 L. Ed. 388.

The holding in the majority opinion is in direct conflict with

the holding of the Supreme Court of the United States in the case of Christopher v. Brusselback, supra. That case involved facts almost identical with those here involved. There the creditors of a joint stock land bank brought a class action in the state court of Illinois against some of the shareholders of the bank as representatives of the others, and obtained a judgment fixing an assessment against all of the shareholders of the bank for their proportionate share of its indebtedness. Suit was then brought on the Illinois judgment in the federal court in Ohio against shareholders of the bank to collect the amount of the assessment. The Circuit Court of Appeals held that the judgment in the class action in Illinois was binding on all of the members of the alleged class regardless of whether they were actually before the court in the class action. Brusselback v. Arnovitz, 87 Fed. (2d) 761. However, when the case reached the Supreme Court of the United States the judgment was reversed and the judgment in the alleged class action was held invalid. The applicable statute provided that "Shareholders of every joint-stock land bank organized under this act shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." The Supreme Court after pointing out that it had previously held in Wheeler v. Greene, 280 U. S. 49, 74 L. Ed. 160, 50 Sup. Ct. 21, that there was no provision in the Federal Farm Loan Act which authorized the Federal Farm Loan Board to levy an assessment on the stockholders, and no special procedure had been provided by which the corporation could be brought before the court for the purpose of fixing an assessment against the shareholders for the debts of the corporation, said:

"The only means of enforcing the liability left to creditors of a Joint Stock Land Bank, as the Court pointed out in the Wheeler Case, is an adversary suit in equity against the stockholders wherever they may be found.

"The obligation which the statute imposes upon the stockholders is personal, and petitioners can be held to respond to it only by a suit maintained in a court having jurisdiction to render a judgment against them *in personam*. As the liability of the stockholders is to pay the debts of the bank to creditors 'equally and ratably,' judicial determination of the inability of the bank to pay its debts and the amount to be assessed against the stockholders to meet the deficiency are prerequisite to the enforcement of liability, and are essential parts of the only cause of action which the statute gives to the creditors. It is

plain that in such a suit the existence and extent of insolvency are facts, the allegation and proof of which cannot be dispensed with as to any stockholder unless, as between the parties to the suit, they are matters already adjudicated."

\*　\*　\*　\*　\*　\*　\*

"The statutes have fixed only the conditions on which liability of the shareholders is to attach, leaving to creditors as their only recourse the usual procedure of courts as the means of asserting the liability. There is nothing in the statute relating to the organization of Federal Land Banks and the imposition of the stockholders' liability to suggest that by virtue of their membership in the corporation the stockholders can be said to have subjected themselves to a procedure for determining in their absence the essential conditions of liability, or to have relinquished their right to contest, as in any other litigation, every step essential to its establishment. As we cannot say that petitioners' membership in the bank was conditioned upon their surrender of the benefits of a procedure which would otherwise be required, there is no basis for a court to dispense with it more than in other cases in which a personal judgment is sought."

\*　\*　\*　\*　\*　\*　\*

"In the circumstances the decree in the Illinois suit was not res adjudicata as to petitioners in any respect." Christopher v. Brusselback, 302 U. S. 500, 82 L. Ed. 388, 58 Sup. Ct. 350. See also Partridge v. Martin, 102 F. (2d) 284; Holmberg v. Christopher, 110 F. (2d) 729; Miller v. Barnwell Bros., Inc., 137 F. (2d) 257; and Russell v. Todd, 309 U. S. 280, 84 L. Ed. 754, 60 Sup. Ct. 527.

There was no provision in the Act under which NIU operated which conferred upon any one the power to levy an assessment against the subscribers, nor was there any statutory provision which authorized a Receiver of such a concern to recover a judgment for an assessment without service of process on each subscriber attempted to be held liable therefor. Article 5027, Revised Statutes, provided for service of process on the Commissioner of Insurance in certain cases in lieu of service on the subscribers, but it is not contended that the provisions thereof, if applicable, were complied with.

A judgment against parties who were not named as defendants in the suit and who had no notice thereof and who were not adequately represented therein, as shown by the record in this case, is contrary to the fundamental principles of our juris-

prudence. It violates the due process clause of our Federal Constitution. 16 C. J. S. 1246, 12 Am. Jur. 288; Christopher v. Brusselback, supra; Wilson v. Siligman, 144 U. S. 41, 12 Sup. Ct. 541, 36 L. Ed. 388; Browning v. Hooper, 269 U. S. 396, 46 Sup. Ct. 141, 70 L. Ed. 330; Old Wayne Mutual L. Assn. v. McDonough, 204 U. S. 8, 51 L. Ed. 345, 27 Sup. Ct. 236.

From what has been said it is apparent that the judgment in the class action was invalid. The invalidity of the judgment is apparent from the face of the record, and the judgment is therefore void.

There is another reason for holding the judgment in the class action invalid. It was alleged, in substance, that under the arrangements by which the insurance business was carried on, each subscriber became an insured upon receipt of a policy in the association and at the same time an insurer to the amount pledged in the power of attorney signed by him. The petition in the class action implies that some of the indebtedness owing by the insolvent concern is due to subscribers on policies held by them in said concern. It is apparent, therefore, that those subscribers who had suffered losses, and who had not been paid, were interested in enforcing the assessments attempted to be levied by the Receiver in the alleged class action, in order that the Receiver might obtain the funds with which to pay their claims; whereas, those who had no such unsatisfied claims were interested in defeating the assessments. In fact, the decree in the alleged class action makes it clear that the recovery sought against the class was for the benefit of some of those named as defendants therein and who were supposed to defend the suit as representatives of those not named therein. The decree read in part as follows: "It is further ordered, adjudged and decreed that the judgment rendered herein for the recovery of a fund to be paid by each subscriber at National Indemnity Underwriters of America during said period of time involves the control and disposition of a fund *beneficial to the whole class of subscribers at* National Indemnity Underwriters of America *as well as those who are named parties defendant herein.*" (Italics mine.) In other words, according to the recitation in the judgment in the class action, those named as defendants in that suit to represent the absent members of the class were not interested in defeating the Receiver's suit, but it was to their interest for the Receiver to recover. In view of the above it cannot be said that the interest of those named as defendants was adverse to the claim of the Receiver, nor that their interest was the same as that of the absent members of the class whom they were supposed to represent.

In the case of Hansberry v. Lee, 311 U. S. 32, 61 Sup. Ct. 115, 85 L. Ed. 22, where various parties owned lots in a restricted addition and some of them brought a class action against a few of the others as representatives of all those who owned lots in the addition to cancel the restriction, the court in holding that those sued were not necessarily representative of the others said:

"It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation is either to assert a common right or to challenge an asserted obligation. Smith v. Swormstedt, 16 How. (U. S.) 288, 14 L. Ed. 942, supra; Supreme Tribe, B. H. v. Cauble, 255 U. S. 356, 65 L. Ed. 673, 41 S. Ct. 338, supra; Groves v. Farmers State Bank, 368 Ill. 35, 12 N. E. (2d) 618. It is quite another thing to hold that all those who are free alternatively either to assert rights or to challenge them are of a single class, so that any group merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires.."

See also Certia v. University of Notre Dame, supra; 30 C. J. S. 579; 30 Am. Jur. 922; Beecher v. Foster, 51 W. Va. 647, 42 S. E. 647; Lowe v. Taylor, 222 Ky. 846, 2 S. W. (2d) 1042; Fisher v. Porter, 263 Ky. 372, 92 S. W. (2d) 368.

Since some members of the alleged class were interested in having the assessment paid, while others were interested in opposing the payment thereof, it cannot be said that all of the 3200 subscribers belong to the same class within the meaning of the rule. In my opinion there was not such unity of interest among the 3200 subscribers as would authorize the maintenance of a class action against some of them as representatives of the others.

The majority opinion relies entirely on the case of Southern Ornamental Iron Works v. Morrow, 101 S. W. (2d) 336, in which the Court of Civil Appeals sustained a judgment in a class action in some respects similar to the facts here involved, and in which this Court refused a writ of ereror. There are several good reasons, however, for not following that decision in this case.

1. There was no showing in the Morrow case, such as was made in the case before us, that the plaintiff had eliminated all defendants who had sufficient interest and who had shown an inclination to contest the suit.

2. In the Morrow case there was no showing that those named as representatives of the class would be benefited by a recovery by the Receiver. There was an allegation to that effect, but it was not supported by proof. Here the judgment in the class action expressly recited that the fund recovered by the Receiver would be "beneficial to those who are named parties defendant herein." What better proof could be produced to show that the named defendants were interested in the recovery than the express recitations of the judgment under attack? How could those named as defendants who were interested in having the Receiver recover adequately represent the absent members of the class who were opposed to such recovery?

3. The judgment in the Morrow case was rendered prior to the rendition of the decision in the case of Christopher v. Brusselback, 302 U. S. 500, 82 L. Ed. 388, 58 Sup. Ct. 350, in which the Supreme Court of the United States held that a judgment rendered under such circumstances was void for lack of due process of law. The opinion in the Morrow case, as well as in the case at bar, is in direct conflict with the holding of the Supreme Court in Christopher v. Brusselback, supra.

4. The decision in the Morrow case occurred prior to the decision of the United States Supreme Court in Hansberry v. Lee, 311 U. S. 32, 82 L. Ed. 22, 132 A. L. R. 741 in which that court held that recovery could not be had in a class action on the several obligations of the members of the alleged class.

5. I have carefully examined the application for writ of error in the Morrow case ,and I am of the opinion that it did not squarely present the points here involved. In that case the petitioner presented only the broad contention that in no case could a judgment be rendered against any defendant without service of citation on such defendant. He did not undertake to present the distinction between cases in which a class action may be maintained and those in which an action will not lie. In my opinion the Supreme Court did not have the question squarely before it in that case.

As previously stated, it is apparent from the face of the record that the judgment in the class action was void. Where it appears on the face of the record that a judgment is void, as in this instance, the judgment may be set aside without the

necessity of showing a meritorious defense, Kern Barber Supply Co. v. Freeze, 96 Texas 513, 74 S. W. 303; Empire Gas & Fuel Co. v. Noble (Com. App.), 36 S. W. (2d) 451; 25 Tex. Jur. 633.

In my opinion the judgments of the trial court and Court of Civil Appeals, sustaining the validity of the judgment in the class action, should be reversed.

Opinion delivered December 29, 1945.

Associate Justice Sharp concurring.